Andrew Turnbull, Respondent, *v.* Marck Bowyer and Pierre Routey, Appellants.

A *bona fide* transferee of commercial paper, transferable by delivery, gets good title, even from one who has stolen it. Mason, J.

An indorsement of negotiable paper is a warranty, by him who makes it, to every subsequent holder in good faith, that the instrument itself and all the signatures antecedent to such indorsement, are genuine; and where these signatures are forgeries, the indorser is at once liable upon his warranty to such subsequent holder without any presentment for payment or notice of non-payment.

M. got possession of a check drawn by Martin, payable to Richmond & Holman. Making a purchase of Ball, Black & Co., they took this check from M. in payment, gave him their check for the balance, intending to make it payable to the payees of the other, but by mistake, wrote the names Kierhmon & Holmes. No such firm as the latter appears to have been in existence. M. procured this check to be certified, and the forged names of the payees, Kierhmon & Holmes, being indorsed upon it, offered

it to the defendants for clothes. The defendants, on learning from Ball, Black & Co. that the check was genuine, indorsed their own names upon the back and took it to their own bank for deposit. The bank not receiving it, it was taken away by M., who was present, with the defendants' names indorsed, and he soon after passed it to plaintiff for value. In an action to recover the amount of the check of the defendants—*Held*, that they were liable to the plaintiff without presentment of the check for payment or notice of non-payment to them.

Evidence was admissible to show that the names of Kierhmon & Holmes, as payees, inserted by Ball, Black & Co. in the check, were so inserted by mistake and with the intention of writing the names of the payees of the other check. It tended to rebut the inference that these were fictitious names, intentionally inserted, which would have given to M. the right to negotiate the check by indorsing it himself.

(Argued April 2d, 1869, and decided June 12th, 1869.)

ONE John S. Martin, of New York, being indebted to Richmond & Holman, of Erie county, N. Y., on February 21st, 1863, drew his check on the Ocean Bank, in New York city, for $568.70, payable to their order, and inclosed the same in a letter addressed to them at their place of residence, and deposited the letter in the letter-box of the Grammercy Park House, New York.

The check was afterwards found in possession of one Miaglia, who gave it to Ball, Black & Co., in payment for a watch and chain, price $115, and received from Ball, Black & Co. their check for the difference, $453.70, intended to be drawn payable to the order of the payees in the Martin check, but in which the payees' names were written Kierhmon & Holmes. Subsequently this check of Ball, Black & Co., which Miaglia had procured to be certified, was offered with the names of Kierhmon & Holmes indorsed thereon, to the appellants, who are merchant tailors, in exchange for clothes. The defendants called with the check on Ball, Black & Co., and saw one of the firm, who said the check was good, and that if it had not been certified they would give the money on it, or a check payable to the defendants. Defendant, Bowyer, then went to their own bank (Pacific Bank), indorsed the check, and handed it to the receiving teller for

deposit. The teller asked him if he knew the names of the indorsers. He said no, that he knew Ball, Black & Co., and they said the check was perfectly good. The teller told him not to take it. Then Miaglia, who was present took the check with the defendants' indorsement thereon, put it in his pocket, and went off. Miaglia subsequently gave the check, with defendants' indorsement thereon, to plaintiff, on the purchase from plaintiff of a bill of goods. Plaintiff passed it to Dick & Fitzgerald, by whom it was presented for payment, and to whom it was paid by the Broadway Bank. The indorsement of the payees' names, Kierhmon & Holmes, was a forgery, and on its being discovered the bank applied to and were reimbursed by Dick & Fitzgerald, and they in turn applied to and were reimbursed by the plaintiff. The plaintiff applied to the defendants, who refused to pay. The jury found a verdict for plaintiff. The General Term overruled exceptions taken, and ordered judgment on the verdict Defendants appeal. The opinion of the court below in the case is reported in 2d Robertson's Superior Court Rep., 411.

Defendants' counsel asked the court to charge :

1st. That if the jury believe that the check of Ball, Black & Co. was obtained from them by the felony of Miaglia, the defendants are not liable to the plaintiff on the indorsement, even though the plaintiff paid a consideration for the same, which the court refused to charge. To which refusal the defendants' counsel then and there excepted.

2d. That if Miaglia took the check indorsed by the defendants from them without their consent, and feloniously, then the defendants are not liable to the plaintiff, which the court refused to charge. To which refusal defendants' counsel then and there excepted.

3d. That if the jury believe there is sufficient evidence to show that the indorsement of Kierhmon & Holmes was intended for Richmond & Holman, then the defendants are not liable without proof of demand of payment of the check, and of refusal to pay, which the court refused to charge. To which refusal defendants' counsel then and there duly excepted.

Judge Monell charged the jury that the only question for them to determine was whether the signature of the payees, indorsed on the check of Ball, Black & Co., was genuine or a forgery. That there was nothing in the circumstances of the case calculated to put Mr. Turnbull upon inquiry as to the genuineness of the signature. Nor was there anything in the discrepancy between the names of the payees of the check drawn by Mr. Martin and the payees of the check drawn by Ball, Black & Co. which it was necessary for the jury to consider. ) The evidence was very clear that the check in question was drawn payable to the same payees named in the check by Martin; and although they were differently spelt, yet the evidence was distinct that it was intended to draw the check to the order of the same firm. The evidence on the question of forgery was slight, but it was sufficient to go to the jury for their consideration; and if, upon the evidence, they came to the conclusion that the indorsement of the payees was forged they should find a verdict for plaintiff for the amount of the check and interest. If they found the signature of the payee was genuine they would find for the defendants. Counsel for the defendants excepted to the charge that there was nothing in the circumstances of the case to put Mr. Turnbull upon inquiry as to the genuineness of the signature; also, excepted to the charge that there was nothing in the circumstance of the discrepancy between the names of the payees on the two checks for the jury to consider. The defendants' counsel, also, excepted to the charge that the only question for the jury to determine was whether the signature of the payees indorsed on the check of Ball, Black & Co. was a forgery.

*Francis Byrne*, for the appellant, cited *American Exchange Bank* v. *City Bank* (5 L. O., 18); *Coggill* v. *American Exchange Bank* (1 Comst., 113); *Brower* v. *Peabody* (3 Kern., 119); *Talbot* v. *Bank of Rochester* (1 Hill, 295); *Gill* v. *Cubbitt* (3 B. and C., 465); *Pringle* v. *Philips* (5 Sandf., 157).

*Wheeler H. Peckham,* for the respondent, cited, upon the point, that the defendants' indorsement was a contract by them that the instrument itself and all antecedent signatures were genuine, and the indorsement of the payees being forged that contract was broken as soon as made, Story on Prom. Notes (§§ 135, 379, 380, 387) ; 2 Sandf., 431 ; *Canal Bank* v. *Bank of Albany* (1 Hill, 287) ; *Coggill* v. *American Exchange Bank* (1 Comst., 103); *Williams* v. *Mathews* (3 Cow., 252); *Herrick* v. *Whitney* (15 Johns., 240); Story on Prom. Notes, § 138 ; *Lovell* v. *Evertson* (11 Johns., 51).

That a purchaser in good faith gets good title to commercial paper, though stolen, he cited Edwards on Bills, 308, 309, 310.

It was sufficient as a breach of the defendants' contract that the persons who were intended as payees did not indorse. (2 Sandf., 431.)

MASON, J. In the case of commercial paper a *bonâ fide* purchaser gets a good title, although it may have been stolen and is transferred by the thief. (Edwards on Bills and Prom. Notes, 308, 309, 310, and cases there cited.) This check was not stolen, however, from the defendants, and they, without any objections made, allowed Miaglia to receive it and depart, after they had indorsed it in blank. As to all subsequent *bona fide* holders, therefore, they must be regarded as indorsers. The rule is well settled also that an indorsement of commercial paper is a contract with every subsequent holder, that the instrument itself and all the antecedent signatures thereon are genuine. (Story on Prom. Notes, §§ 135, 379, 380, 387, and cases there referred to.)

The plaintiff was proved to be a *bona fide* purchaser of this check ; and as the judge submitted the question, whether the indorsement of the payees was genuine or a forgery to the jury, and the jury found that such indorsement *was a forgery* the liability of the defendants to the plaintiff was fully established. The plaintiff having purchased this check of Miaglia, in good faith, and paid value for it, there was an implied

warranty in law on the part of the defendants to the plaintiff, as holder, that the indorsement of the payees was genuine. The plaintiff acquired no title to the check as against Ball, Black & Co., and was entitled to recover of the defendants, the amount of the check, upon their implied warranty. The plaintiff was under no obligation to protest the check, and the defendants have lost nothing by his omission to do so. The defendants' liability was fixed before presentment of the check. They contracted that the signature of the payees was genuine, and it turned out to be a forgery; that alone rendered them liable. (*Goddard* v. *The Mechanics' Bank*, 4 Comst. R., 147.) The judge committed no error in refusing to charge the first request of the defendants, for the reason that there was no evidence in the case that would have justified any such finding by the jury; and besides, as to negotiable paper, the rules of law would not justify such a charge. If the signatures of all the prior parties to the check were in fact forged by Miaglia, the defendants are notwithstanding liable, as by their indorsement, they impliedly guaranty, the genuineness of all the prior signatures to the paper. The next request is equally untenable; first, for the reason that the evidence would not justify a verdict that Miaglia feloniously, and without the consent of the defendants, took the check with their indorsement from them, and the defendants' liability would not be changed, even did he take the check without their consent; but it is apparent that he did not do so. The defendants indorsed the check in the presence of Miaglia, and presented it to the bank, and the cashier inquired of the defendant presenting the same, if he was acquainted with the payees, and when he told the cashier he was not, but that he knew Ball, Black & Co., and they said the check was all right, the cashier, finding that they did not know the signatures of the payees, and whether the same was genuine, very properly advised the defendants not to have the check cashed; and thereupon Miaglia took the check and put it in his pocket, without any objection from the defendants. The defendants had paid nothing for the check, and as regards them, the check belonged to

Miaglia, and if they saw fit to allow him to take it, and retain it with their indorsement upon it, they must be held liable to any subsequent holder in good faith, as indorsers of the check. The third request to charge is wholly untenable, when the indorsement of the payees is found by the jury to be a forgery, as we have shown. No error was committed in the charge. There was certainly nothing in the case that should have put the plaintiff upon inquiry as to this indorsement of the payees.

The evidence to show that Ball, Black & Co. intended to make this check payable to the payees in the Martin check, which they then received from Miaglia, and that the clerk was so directed to fill it out, was properly received. The evidence had no materiality, so far as it went to explain the discrepancy in the spelling of these names, but it was material to show that it was not intended to make it payable to Miaglia, or to fictitious persons, so that Miaglia could use it without the indorsement of the payees. Miaglia was a stranger to them, and they took the precaution, probably, to make their check payable to the indorsers upon the check which they received from him, so that he would have to procure their indorsement before using it. The case of *Coggill* v. *The Am. Ex. Bank* (1 Comst. R., 113) shows that this evidence was competent. That this evidence was competent is pretty apparent, I think, to the appellant's counsel, for it furnishes a perfect answer to his fourth point made upon this appeal, which is that this check was payable to fictitious persons, and Miaglia could transfer it so as to give a good title without any indorsement. The judgment of the Superior Court was right and should be affirmed.

All the judges concurring, judgment affirmed.