## T. L. AIRY & CO. v. NELSON & HANKS.

1. BILLS AND NOTES: *Warranty of indorser: Notice: Demand.*
   An indorser of a note or bill that has been paid is liable upon his indorsement as upon a new contract, and no notice or demand is necessary to fix his liability. For an indorser of past due or dishonored paper impliedly warrants that it is a subsisting, unpaid obligation; just as he warrants that it is genuine, and not a forgery, or that it is not tainted by an illegal consideration, as gaming or usury.

2. RELEASE: *Agreement to discharge debtor, etc.*
   An agreement by a creditor to accept certain property and securities of the debtor, in his hands, in full payment of his debt, together with his receipt in full for the debt, is a release of the debtor's liability as indorser upon one of the securities which the creditor holds.

APPEAL from *Phillips* Circuit Court.

Hon. J. N. CYPERT, Circuit Judge.

*Tappan & Hornor*, for appellants:

The act of indorsement forms a new contract with the indorsee, which constitutes, or implies, a promise that the paper is due and payable according to its tenor. It is an original undertaking. (*Parsons' Bills and Notes, Vol. II, p. 23.*) Evidence can not be admitted to show how parties understood the contract of indorsement, unless there is fraud. *Ib., p. 24.*

Demand, refusal and notice are necessary to charge an indorsee by the Law Merchant and our statute. (*Jones v. Robinson, 11 Ark., 522.*) An indorsement after maturity is, in effect, an inland bill of exchange, payable on demand; and, to charge the indorsee, demand is necessary, within a reasonable time, and immediate notice given. (*Levy v. Drew, 14 Ark., 336.*) This was done on the day of the transfer.

The agreement of April 10 did not discharge the liability of the indorsers.

*P. O. Thweatt*, for appellees:

Parol evidence was admissible to prove the consideration for, and the circumstances under which the assignment, indorsement and transfer were made. *2 Parsons on Bills and Notes*, p. 24; *Daniel on Neg. Inst.*, vol. 1, p. 537–723.

The presentation, demand and notice were not sufficient to bind the indorsers, according to cases in 11 and 14 Arkansas, cited by attorneys for appellants.

The note was transferred as collateral security only, on the seventeenth of January, 1878, and not absolutely; and, subsequently, with other securities, accepted in full satisfaction of all debts, etc.; and that, too, after notice by Mooney that he claimed to have paid it in full.

SMITH, J.    In 1872 George S. and Ambrose D. Mooney were indebted to Thomas H. Quarles in the sum of $3,500, as evidenced by their promissory note, made to him and falling due February 1, 1873, without interest until maturity, and thereafter bearing the legal rate. For security they conveyed to W. L. Nelson, in trust, certain personal property (a tract of land and a growing crop) and armed the trustee with a power of sale in case of default. In the winter of 1872–3 they paid to the trustee, out of the proceeds of the crop, $2,033.72, for which receipts were taken, specifying on what account the money was paid. They also delivered to Quarles, before their paper was due, a part of the personal property mentioned in the deed of trust, which was accepted by him as of the value of $290. On the twelfth of February, 1873, there remained due $1,186.20, and, being unable to pay this balance, the

Mooneys surrendered the land to Quarles, that he might lease it out from year to year, and satisfy the mortgage-debt out of the rents. About 140 or 150 acres were in cultivation, and the rents actually received by the mortgagee in possession during the time that this arrangement continued, viz., from 1873 to 1877, both years inclusive, averaged about $500 per annum. From this some deduction must be made for taxes and repairs. But at all events the debt was paid. For, in the spring of 1878, possession was relinquished to the mortgagors. But no credits had been entered on the note; nor was the record of the deed of trust marked satisfied.

At some time between the making of the note and the fourteenth day of June, 1877, the date not being shown, Quarles indorsed the note in blank to Nelson & Hanks, bankers in Helena, of which firm W. L. Nelson was a member. And on the day last aforesaid they, finding it necessary to arrange for a large over-draft upon their factors in New Orleans, likewise indorsed the note in blank, and deposited it as collateral security with T. L. Airy & Co. At the same time, and for the same purpose of procuring credit, they left with T. L. Airy & Co. a lot of other securities, and gave them a deed of trust upon all of the real estate which they individually owned.

In January, 1878, an agreement was signed which recited an indebtedness of $75,000, subject to certain credits, which would reduce the amount to about $61,000, and the substance of which, so far as it affects this case, was that T. L. Airy & Co. should take the real estate mortgaged by Nelson & Hanks to them, crediting their account with $33,400, and should enforce the speedy collection of the collaterals sold by them, they agreeing to bid specific sums for each tract. of land upon which the securities were liens. In this agreement the note in controversy is described as "one note

of George S. Mooney and Ambrose D. Mooney, payable to
Thomas H. Quarles, and indorsed by said Quarles," and
also indorsed by Nelson & Hanks, "being for $3,500, with
interest from the first day of February, 1873," and "said
note being secured by lien upon real estate." And T. L.
Airy & Co. undertake "to make the property securing the
Mooney note realize such sums as the property may be
valued at, the said Nelson & Hanks selecting one and the
said T. L. Airy & Co. selecting one person, the two so
chosen to select a third, should they not agree as to the
value." The appraisers selected valued the property at
$4,000. It was further agreed that the credits to be allowed
for the values of real estate were not to operate as an ex-
tinguishment *pro tanto* of Nelson & Hanks' debt until the
legal titles thereto should be acquired by T. L. Airy & Co.,
but only as the agreed value at which they were to be
rated in the settlement.

In the course of the same day on which this agreement
was made, the attorneys of T. L. Airy & Co. gave notice to
one of the Mooneys of the assignment of their note, and
demanded payment of the same, which was refused, and the
attorneys were informed that the note had already been
paid. Nelson and Janin, the latter a partner in the house
of T. L. Airy & Co., were still in conference when this in-
formation was received, and it was communicated imme-
diately to them. Nelson said that Mooney was under a
mistake, and that the books of Nelson & Hanks would
show the contrary of what he had asserted.

Eight days later, T. L. Airy & Co. filed the present bill
against Nelson & Hanks, Quarles and the Mooneys for fore-
closure of the deed of trust. And in an amended bill, filed
about a year afterwards, and after the answer of the
Mooneys had come in, they prayed judgment against
Nelson & Hanks upon their liability as indorsers.

The Mooneys pleaded payment, and proved it. The court decreed the cancellation of the note and deed of trust, but retained the amended bill to settle the equities between T. L. Airy & Co. and Nelson & Hanks. However, on final hearing, this amended bill was also dismissed "for the want of equity," as it is stated; and T. L. Airy & Co. appealed from the decree discharging Nelson & Hanks.

If the facts detailed above were all that are disclosed by the record, we should probably reverse the decree. For it is certain that at the date of the deposit as collateral security, or at all events at the date of the January agreement, the note and trust deed were nothing more than waste paper, and that not a cent was due upon it. And it is hard to escape the conviction that Nelson, at least, was aware that the debt had been paid, either in whole or in part. For some of the payments had been made through him, as we have seen; and in the year 1877, which was probably soon after the note was indorsed to his firm, he took charge of the place, guaranteeing a rent of $500, less the taxes, to be applied as a credit upon the debt of the Mooneys. So that he had rather an intimate acquaintance with the transactions from their inception, and whatever knowledge he possessed on the subject would be imputed to his partner. Notwithstanding the note and trust deed were no longer outstanding securities at the date of this agreement, yet they would have been liable on their indorsement; for that was a new contract. Nor was proof of notice and demand necessary to fix such liability. For an indorser of dishonored or past-due paper impliedly warrants that it is what it purports to be, viz., a subsisting, unpaid obligation; just as he warrants that it is genuine, and not a forgery; or as he warrants that it is not tainted by an illegal consideration, such as gaming or usury. *Copp v. McDougall, 9 Mass., 1; Turnbull v. Bowyer, 40 N. Y., 456; Mays v. Cullison, 6 Leigh, 230.*

1. BILLS AND NOTES: Warranty of indorser.

But there were other facts in evidence, which doubtless determined the court below to deny all relief, and to which we must now advert.

A month after the January agreement was entered into, Hanks, writing in behalf of his firm, addressed to T. L. Airy & Co. a long and very candid letter, in which he unfolded the financial straits in which his banking-house was involved, and told his correspondents that they were unable to carry out the agreement; that actions had been and were about to be brought against them, which would cripple them in the collection of their assets; and they were determined to be rid of the worry of debt; they were willing to surrender all they had, but if their creditors would not accept this and discharge them, the District Court of the United States was always open as a court of bankruptcy. Finally they proposed that T. L. Airy & Co. should receive releases of the equity of redemption in the property mortgaged to them, and take the notes and other securities in their hands, regardless of their value, in full satisfaction of all demands.

The only response which T. L. Airy & Co. made to this letter was, it seems, to instruct their trustee to sell Nelson & Hanks out. On the day prior to the day fixed for the sale, a day in April, Janin came to Helena, sought an interview and requested Nelson & Hanks to submit a proposition for the settlement of all their matters. They said to him in effect, "Take our real estate, upon which you have a deed of trust, and the securities belonging to us which you hold, without regard to value, and give us a clean receipt in full." Janin answered, "Why, this is the very same proposition you made sixty days ago." They replied, "Precisely; it is all we can do." Janin then asked until 10 a.m. next day to consider of it, and at the expiration of the time announced that his house accepted

the proposition. It was then reduced to writing and signed by the parties. Among other things it specifies that " in consideration of the foregoing" (meaning what Nelson & Hanks are to do, or cause to be done), " the said T. L. Airy & Co. agree to receive the property included in said deed of trust and the notes now in their possession, which have been heretofore assigned to them by said Nelson & Hanks, in full settlement and satisfaction of the indebtedness now due and owing to them by said Nelson & Hanks, regardless of what said property may be sold for at such sale." And the following receipt was given:

2. RELEASE:<br>Agreement to discharge debtor.

" HELENA, ARK., April 10, 1878.

"Received from Messrs. Nelson & Hanks full payment of their account as referred to in agreement entered into and signed by us this day.

"(Signed)

"T. L. AIRY & Co."

No special provision was inserted in the agreement to cover the contingency that the Mooney note had been paid, although T. L. Airy & Co. had held the note for nearly ten months, and three months before, they had been distinctly informed that the Mooneys claimed to have paid it. If it had been the intention not to include in the general settlement the liability of Nelson & Hanks as indorsers, it should have been expressly excepted.

No reservation appearing, the last agreement, coupled with the receipt, will be taken as a release of all demands.

Affirmed.