WARREN-SCHARF ASPHALT PAV. CO. v. COMMERCIAL NAT. BANK OF DETROIT, MICH.

(Circuit Court of Appeals, Sixth Circuit. October 23, 1899.)

No. 671.

1. PRINCIPAL AND AGENT— INDORSEMENT OF FORGED CHECK BY AGENT—LIABILITY OF PRINCIPAL.

An agent of a corporation, duly authorized to indorse checks in its behalf for deposit, may bind it by such an indorsement to the payment of a check purporting to have been drawn by the corporation to its own order, although such check was in fact forged by the agent himself.

2. BILLS AND NOTES—INDORSEMENT OF FORGED CHECK.

The liability of a payee who by himself or an authorized agent indorses and deposits in a bank for credit a forged check is not the usual contingent liability of an indorser, but that of a warrantor of the genuineness of the paper; and it is absolute, requiring neither demand nor notice.

3. BANKING—DEPOSITS—RECEIVING FORGED CHECKS.

A paving company having its principal place of business in New York opened an account with a bank in Detroit, and transmitted to the bank a power of attorney authorizing the company's local agent in Detroit to indorse and sign checks and deposit money in its name and for its use. From time to time the agent indorsed and deposited checks drawn by the company to its own order on its New York bank, which were credited to its account as cash. The agent forged such a check, indorsed and deposited it in the usual manner. checked out the proceeds, and absconded. *Held*, that the bank was not bound to know the company's New York signature, and that, in the absence of circumstances amounting to notice that the signature was a forgery, the company was liable to it on the indorsement for the amount of the check.

4. SAME—CREDITING CHECKS IN ADVANCE OF COLLECTION.

The bank was not guilty of negligence, or a violation of the usual rules and customs of banking, in receiving and crediting the check as cash; and the paying out of such deposit prior to the collection of the check did not constitute an overdraft, as between the parties, but on such payment the bank became a bona fide holder of the check for value.

5. PRINCIPAL AND AGENT—POWER OF ATTORNEY—CONSTRUCTION.

Where a power of attorney given by a corporation, authorizing an agent to indorse and sign checks, provided that all checks drawn should be "in the name of this company," a check drawn on a blank furnished by the company to the agent, having the name of the company printed at its head, and signed only in the name of the agent, as "attorney and cashier," which was in the form of all previous checks drawn by the agent, cannot be repudiated by the company as not within the terms of the power.

6. SAME—RIGHTS OF THIRD PARTIES DEALING WITH AGENT.

A power of attorney given by a corporation, authorizing an agent to draw checks on a bank "for the use of" the company, does not impose on the bank the responsibility of seeing that the money drawn on such checks is devoted to the use of the company; and it is protected in the payment of

such a check, drawn payable to "cash," to the agent himself, where made in good faith, and where money had usually been drawn by the agent in that manner.

In Error to the Circuit Court of the United States for the Eastern District of Michigan.

This was an action by the Commercial National Bank of Detroit, Mich., against the Warren-Scharf Asphalt Paving Company, a corporation of the state of New York, but having an office and agency at Detroit. The action was brought for the purpose of recovering $10,000, with interest, alleged to have been advanced or paid out on account of the said Warren-Scharf Asphalt Paving Company under the following circumstances:

First. On the 10th of July, 1897, one C. R. England, being at that time the local agent and representative of the paving company in Detroit, opened a banking account in the name of the said Warren-Scharf Asphalt Paving Company with the said bank, presenting as authority a letter bearing date July 8, 1897, in the following words:

"To Commercial National Bank, Detroit, Michigan—Gentlemen: We beg to advise you that we have to-day issued to our Mr. C. R. England our banking power of attorney, No. 243, which he will present to you. We desire to reopen our account with you."

Inclosed in this letter was the power of attorney referred to, which was in the words and figures here following:

"Office of Warren-Scharf Asphalt Paving Company, 81 Fulton Street.

"New York, July 8, 1897.   No. 243.

"To the Commercial National Bank, of the City of Detroit, State of Michigan: This certifies that C. R. England is officially authorized to indorse and sign checks and deposit moneys and make drafts on this company in the name and for the use of this company, in and through the Commercial National Bank, of the city of Detroit, state of Michigan, until this power of attorney shall have been officially canceled, but not longer than during the year 1897. The said C. R. England will be specially authorized by official letter or telegram in the personal name of the president or vice president or other duly-authorized official of the company to make drafts for specified amounts. The said bank account to be kept in the name of this company, and all checks drawn against or indorsed for deposit to said account by the said C. R. England to be in the name of this company.

"Warren-Scharf Asphalt Paving Company,
"By F. W. White, Treasurer.
"W. R. Warren, President.   [L. S.]"

From time to time between the opening of that account and August 7th, following, England deposited to the credit of the paving company checks drawn in New York by the paving company against the National City Bank of New York, and payable to its own order; the checks being indorsed in Detroit by the paving company through England as its "attorney and cashier." These checks, according to the usual course of business, were entered upon the company's pass book and on its account as cash. Against this account England from time to time drew checks payable to "cash," and obtained the money himself. These checks were usually accompanied by a slip called a "pay-roll order," showing the denomination in which the money was desired, though sometimes such a memorandum was placed on the back of the check itself. At close of business August 6, 1897, there was a balance to the credit of the paving company of something over $1,400, of which $1,200 consisted in one of the company's New York checks which had been deposited as cash on the 4th of August. On the morning of August 7th this balance was increased by the deposit of a check for $10,000 purporting to be drawn by the paving company in New York against the National City Bank of New York to its own order. This check was indorsed in Detroit by the paving company through England, and at his request passed to the credit of the company as cash, following in this respect the course of business previously pursued. This check and its indorsement were in these words and figures:

"New York, Aug. 5, 1897.

"No. H2,985.      Warren-Scharf Asphalt Paving Company.

"Pay to the order of Warren-Scharf Asphalt Paving Company ten thousand & 00/100 dollars ($10,000.00).

"Jas. D. Lawrence, Attorney & Cashier.

"To the National City Bank, New York."

Indorsement: "Pay to order of Commercial National Bank, Detroit, Michigan.      Warren-Scharf Asphalt Paving Company,

"By C. R. England, Atty. & Cashier."

Just before making this deposit, England, upon one of the paving company's checks, drawn by himself, had drawn out $1,132.28, ostensibly for the purpose of paying the company's employés; the check being accompanied by a payroll slip containing a memorandum of the denominations of money in which the check was to be paid. That check was in the usual form in which England had been accustomed to draw checks against the company's account. As typical of the manner in which the account had been checked against, we here set out this check, which is as follows:

"No. 14,608C.                              Detroit, Mich., Aug. 7, 1897.

"Warren-Scharf Asphalt Paving Company.

"Pay to the order of cash eleven hundred and thirty-two and 28/100 dollars ($1,132.28).                    C. R. England, Atty. and Cashier.

"To the Commercial National Bank, Detroit, Mich."

Shortly after making the $10,000 deposit before mentioned, England presented another check for $10,000, which at his request was paid to him in large bills. That check was in these words and figures:

"No. 14,609C.                              Detroit, Mich., Aug. 7, 1897.

"Warren-Scharf Asphalt Paving Company.

"Pay to the order of cash ten thousand & no-100 dollars ($10,000.00).

"C. R. England, Attorney & Cashier.

"To the Commercial National Bank, Detroit, Mich."

With this money England absconded, and has not been since heard from. The check deposited by him on same day, which had made the company's account good, when duly presented on August 9th to the National City Bank of New York for payment, was refused, the signature of the drawer being a forgery. The evidence established that no such person as James D. Lawrence was known to the paving company, and that the signature of James D. Lawrence had been written by England. When England presented the check for $1,132.28, he told the paying teller that in about an hour he would return, and would want $10,000. This sum he said he would want in cash; that he was going to Toledo in the afternoon about a transaction in which nothing but money could be used; that the banks would be closed, so that he could not take the money in a certified check. He intimated, also, that the transaction at Toledo was one of which no record should be made, and that therefore nothing but money would do him. Before England returned, the paying teller examined England's power of attorney, for the purpose, as he states, of seeing whether there was any limitation upon the amount he might check out. He also asked the bookkeeper whether any deposit had been made to the company's credit that morning, to which the reply was, "Not yet." This interview with England occurred about 10 o'clock in the morning. In the course of the following hour the deposit heretofore mentioned was made with the receiving teller, and at once passed to the credit of the company's account by the bookkeeper. Shortly after that England presented for payment the check for $10,000 above set out. The paying teller made the usual inquiry as to the then state of the account, and was informed by the bookkeeper of the deposit shortly before made, and that the account was good for $10,000. When the teller handed the money to England, he jocosely remarked, "You want to be careful of this, and don't skip or anything." To which England replied, "I should say not."

Upon the conclusion of all the evidence, the court instructed the jury to find for the defendant in error in the sum of $10,000, with interest from August 7, 1897.

Fred W. Whiting, for plaintiff in error.

A. E. Angell, for defendant in error

Before TAFT and LURTON, Circuit Judges, and SEVERENS, District Judge.

LURTON, Circuit Judge, after making the foregoing statement of facts, delivered the opinion of the court.

The authority expressly conferred upon England included the power to "indorse and sign checks." The evidence shows that remittances were several times made to him from the New York office of the company by checks payable to its own order. To utilize them, an indorsement was essential. An indorsement of a check purporting to be payable to the order of the paving company, for the purpose of either collection or deposit, implied a contract that the instrument itself and all antecedent indorsements were genuine. Story, Prom. Notes, §§ 135–380, 387; 4 Am. & Eng. Enc. Law (2d Ed.) 447; Harris v. Bradley, 7 Yerg. 310; Turnbull v. Bowyer, 40 N. Y. 456–460; Onondaga County Sav. Bank v. U. S., 26 U. S. App. 377, 12 C. C. A. 407, and 64 Fed. 703. In the absence of circumstances amounting to notice that the signature of the paving company was a forgery, the defendant in error had a right to rely upon the indorsement made by England as a representation and guaranty by the payee that the check itself, as well as the signature of the drawer, was genuine. Although the defendant in error was bound at its peril to know, the signature of a check drawn by England under the power of attorney to him, yet it was not the payee of this forged check; and it was not bound to know the New York signature of the paving company, or the genuineness of the filling up of a check purporting to have been drawn at the principal office of the corporation upon its New York bank of deposit. Unless, therefore, it acted in bad faith, or the forgery was so obvious that it should have been detected by bare inspection, it was not negligent in accepting the check as a cash deposit in reliance upon the representation of the known local agent of the apparent drawer, and upon the contract implied from the indorsement placed thereon by England under his known authority. National Bank of Commerce v. National Mechanics' Banking Ass'n, 55 N. Y. 211–215. Neither in the form or signature of the check, nor in any circumstance occurring when the check was indorsed and deposited, do we find any fact which would justify a jury in holding the defendant in error guilty of any negligence in taking this forged check and crediting it as a cash deposit. The instrument turned out to have been unauthorized by the apparent drawer, and the signature a forgery. If the drawer and payee were not legally identical with the indorsee, the fact that the instrument was not genuine, and the drawer's signature a forgery, would operate to fix the liability of the indorser as absolute, without either demand or notice. In such a case the indorsee would become entitled to recover the amount of the check from the indorser upon the implied warranty that the in-

strument and the antecedent signatures were genuine. Liability would be fixed before and without any presentation of such a forged check. Turnbull v. Bowyer, 40 N. Y. 456–460. The fact that the drawer, payee, and indorser were legally the same person does not change the principle. The indorsement of this check by the paving company, or by one authorized to indorse in its name, was equally effective as a warranty of the genuineness of both the instrument itself and all antecedent signatures. The liability of the paving company growing out of its relation to the instrument as an indorser was, by reason of the fact that the instrument was a forgery, not the usual contingent liability of an indorser, but one of fixed responsibility as a warrantor of the genuineness of the paper indorsed.

But it is said that the authority to England did not authorize him to overcheck, and that, until the check deposited had been actually collected, there was no authority to pay the $10,000 check presented on the same day. The forged check was the apparent check of a responsible customer upon another bank. According to the well-recognized course of banking business, this check was accepted as a cash deposit. Morse, Banks, §§ 569, 570. The receiving teller testifies that in the acceptance of this check, and crediting it at once to the account of the paving company, there was nothing out of the ordinary course of banking business. This evidence is not contradicted or questioned. The bank was under no obligation to credit a check thus deposited as cash, but it was clearly guilty of no negligent or unusual conduct in doing so. When received and credited as cash, the account was subject to check, and the bank had no right to refuse to pay checks against the account thus swollen. Armstrong v. Bank, 133 U. S. 433–466, 10 Sup. Ct. 450. The check subsequently paid was in no true sense an overdraft, and the bank became the bona fide holder of the forged check for value so soon as checks were drawn and paid by reason of the credit thus obtained.

It is next urged that the check drawn by and paid to England on August 7th was not a check drawn in the name of the paving company. The authority of England was to "indorse and sign checks"; "all checks drawn against or indorsed for deposit to said account by the said England to be in the name of this company." It is said that the $10,000 check paid to England was signed only in the name of "C. R. England, Atty. & Cashier." This is a misreading of the instrument. The name of the "Warren-Scharf Asphalt Paving Company" appears on the face of the check above the signature of England. It is true that the name of the company appears above the words "Pay to the order of cash." This check was in the form of all previous checks drawn against this account. The name of the paving company is engraved or printed on the check, and was taken from the check book furnished England by the company. It is likewise the form in which the company's name was signed upon checks drawn at its principal office against its New York account. The objection is not well taken.

It is next said that England's authority was limited to signing checks "for the use of" the company, and that this check was drawn payable to "cash," and was presented for payment by England him-

self, and that a check thus drawn and paid was equivalent to a check payable to the order of England, and was therefore not prima facie a check drawn for the "use of" the company. The authority to sign checks for the use of the company imposed no affirmative duty upon the bank to inquire into the purposes of the check, or the use to which the money was to be put. If the bank paid this check in good faith, having no notice of England's fraudulent purposes, and not acting in collusion with him, it should be protected. England was acting within the apparent scope of his agency, and the bank was not bound to inquire into the use he intended to make of the proceeds of the check, it being drawn in usual form and in ordinary course of business. All or nearly all of the checks theretofore drawn against this account had been payable to "cash," and had been presented by and paid to England. It is true that most of them had been accompanied by a slip indicating the kind of money needed, which would possibly imply that the check was drawn for money needed to pay off employés. But there was no other indication than this memorandum made by England himself that the check had been drawn for the use of his company. In the absence of circumstances calculated to arouse suspicion that the check had been drawn for some fraudulent purpose, the bank was under no obligation to know that the drawer's own agent was going to misappropriate the proceeds. The mere fact that this accredited agent of the paving company had drawn this check payable to "cash," and that he presented it for payment himself, was not enough to put the bank upon inquiry as to the honesty of his purposes in the subsequent use of the money. The explanation given by England, that the money would be needed for use in a neighboring city after bank hours, and for a transaction in which money alone would answer, was calculated to lead the bank to the conclusion that the check had been drawn, and that the proceeds were to be used, for the purposes of the paving company. The intimation that the transaction in which it was to be used was one of which no record was wanted carried no intimation that it was not a transaction for the benefit of the company, and justified no inquiry into its character. The inquiries made by the paying teller as to the terms of the letter of authority and as to the then state of the paving company's account were all proper precautions for the security of the bank. There was nothing in the colloquy between England and the bank's teller indicative that suspicion as to the honest purposes of England had been aroused, or upon which the bank should be charged with negligence or as exceeding its authority in respect to paying checks drawn by England. There was no evidence from which a jury might rightfully infer that the bank had notice that England was exceeding his authority or intended a misappropriation. The plaintiff in error intrusted England with the authority to indorse and sign checks in its name, and any loss arising from his dishonesty, when apparently acting within the scope of his known powers, should be borne by those who enabled him to perpetrate the fraud, rather than by one who has innocently suffered. There was no error in instructing the jury to find for the defendant in error, as there was no such conflict of evidence as would properly make an issue for the jury. The judgment is accordingly affirmed.