FIRST NATIONAL BANK OF PUKWANA, Respondent, v. BRULE NATIONAL BANK OF CHAMBERLAIN, Appellant.

(161 N. W. 616.)

(File No. 3905.   Opinion filed March 5, 1917.   Rehearing granted May 5, 1917.)

1. **Negotiable Instruments—Forgery of Endorsement, of Signature, Rule Distinguishing.**

    The courts generally take cognizance of a distinction between forgeries of endorsements on instruments otherwise valid, or cases in which a genuine instrument has been raised in amount by means of a forgery, and those cases in which the signature to the original instrument is a forgery. The two classes of cases first named are said to be covered by rules of law permitting recovery of money paid under mutual mistake, while the latter class is controlled by the rule relating to commercial paper.

2. **Same—Uniform Law of Bank Check, Payee's Warranty of Signature, to Drawee—Rule.**

    Under Laws 1913, Chap. 279, Sec. 65, providing that every person negotiating an instrument by delivery or by qualified endorsement warrants that instrument is genuine and in all respects what it purports to be, held, that the original payee, who endorses the instrument, impliedly warrants to the drawee bank that the maker's signature is genuine.

3. **Banks and Banking—Forged Bank Check—Liability of Payee Endorser Bank to Reimburse Drawee for Paid Check—Warranty of Signature—Estoppel.**

A check whose signature was forged, was endorsed generally by a payee bank, and was paid by the drawee bank, in which the purported maker had been a depositor. **Held,** under Laws 1913, Chap. 279, Sec. 65, providing that every person negotiating an instrument, by delivery or by qualified endorsement, warrants its genuineness, and that it is in all respects what it purports to be, and Sec. 66, providing that every endorser not an accommodating party, who endorses without qualifications, warrants to all subsequent holders in due course, what is warranted by said provisions of Sec. 65, and that the instrument is at time of endorsement valid and subsisting, that the payee bank, by its general endorsement, warranted to drawee bank that the signature upon the check was genuine; and that in absence of any act or change of conditions on the part of the drawee bank, sufficient to create an estoppel, the latter bank is entitled to recover the amount of the forged check upon such warranty.

4. **Negotiable Instruments—Forged Bank Check—"Negotiator's" Warranty of Signature—Negotiation by Endorsement, by Delivery, Causes of Action Distinguished—Parties, Who Liable, Who May Sue?**

Under Laws 1913, Chap. 279, Sec. 65, providing that every person negotiating an instrument by delivery or by qualified endorsement, warrants its genuineness and that it is in all respects what it purports to be, and Sec. 66, providing that every endorser not an accommodating party, who endorses without qualifications, warrants to all subsequent holders in due course what is warranted in said provisions of Sec. 65, and that the instrument is at the time of endorsement valid and subsisting, held, that under Sec. 65, an action upon the warranty is maintainable against the party "negotiating" the instrument either by endorsement or delivery; the two causes of action, one upon contract of endorsement, the other upon the warranty, being distinct; and where negotiation is by delivery only the contract of warranty extends in favor of no other holder than the immediate transferee; the right of action against him as endorser is limited by the provisions of Sec. 66, and extends only to subsequent holders in due course, but in such action recovery cannot be had against drawee, he not being such holder.

5. **Same—Uniform Law—"Negotiator," Who is?—Basis of Warranty of Signature—Liability to Drawee—Statutory Provisions Distinguished.**

Under Laws 1913, Chap. 279, Sec. 65, Subd. 4, providing that when negotiation of an instrument is by delivery only, the warranty, under such negotiation, extends in favor of no holder other than the immediate transferee, the negotiator, within the

meaning of this section, is the person who, either by endorsement or delivery, first puts the instrument into the ordinary channels through which commercial paper goes into circulation; and the warranty intended arises upon the "negotiator's" act, not upon his relation to the instrument in any other respect; and, his obligation of warranty not being limited by the language of the statute to holders in due course, extends not only to subsequent holders in due course, but to drawee. **Held,** further, that Sec. 66, limiting endorser's warranty of genuineness, to subsequent holders in due course, does not embrace the drawee of a check, and the warranty thereby created does not extend to him; which rule is based upon the assumption that the holder of a negotiable instrument who simply presents it for payment makes no representation as to genuineness of signature.

6.    **Banks and Banking—Certified Forged Check—Release of Negotiator's Warranty to Drawee by Acceptance, by Payment—"Acceptance," and "Payment," Distinguished—Statute.**

.    Under Laws 1913, Chap. 279, Sec. 185, providing that where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance, and Sec. 186, providing that, where holder of a check procures it to be accepted or certified, the drawer and all endorsers are discharged from liability thereon, and Sec. 66, providing that every endorser, not an accommodating party, who endorses without qualifications, warrants to all subsequent holders in due course what is warranted by Sec. 65, including genuineness of instrument, and that it is in all respects what it purports to be, and that it is at time of endorsement valid and subsisting, **held,** that both the warranty of genuineness of the signature, and the contract of endorsement, were discharged by payment, or by acceptance by the drawee; but that the provisions of Sec. 66 have no application to the liability created by the warranty under Sec. 65; the latter warranty being an obligation of the negotiator of the instrument, distinct from the contract obligation created by his endorsement, where the instrument is put in circulation by endorsement instead of delivery; and even though the contract of endorsement be **held** discharged by operation of Sec. 66, that fact does not affect his liability as negotiator of the instrument. **Held,** further, that under Sec. 186, "payment" is not "acceptance;" since acceptance is defined by Sec. 131, providing that acceptance of a bill is the signification by the drawee of his assent, to the drawer, and that it must not express that drawee will perform his promise by any other means than payment of the money; that acceptance by certification, or payment of a check, by the express language of the statute, discharges liability only of the persons named therein, to-wit: **the drawer**

and all endorsers; and the contract of endorsement by nego-
tiator is discharged by acceptance, certification, or payment.

7. **Same—Forged Check—Uniform Law—Acceptance, Admissions by, Non-application of Statute to Forged Check.**

Under Laws 1913, Chap. 279, Sec. 262, providing that the acceptor, by accepting the instrument, engages that he will pay it according to the tenor of his acceptance and admits existence of drawer, genuineness of his signature, and his capacity and authority to draw the instrument, held, that when the drawee, of a bank accepts the instrument, he becomes obligated as upon contract for its payment; but Sec. 186, providing that where holder of a check procures it to be accepted or certified, the drawer and all endorsers are discharged from liability thereon, excludes the application of Sec. 262 to. checks, hence the ad-
missions specified in the latter section have no application to the effect of acceptance of a forged bank check.

8. **Same—Forged Check—Warranty of Genuineness by Circulating, Discharge of by Drawee's Payment—Warranty by Payee's Endorsement.**

The warranty of genuineness, arising upon the act of the payee of a check whose signature was forged, by putting the check in circulation, was not discharged by payment of the check by drawee bank; nor was the drawee discharged, or misled to its prejudice, by such payment. Held, further, that the payee bank, by its endorsement and delivery, warranted its own identification of the maker and the genuineness of his signature; the check bearing no indication that it was deposited for collection, nor being otherwise restricted so as to constitute the endorsee the agent of the endorser, and it not purporting to prohibit further negotiation, and the check not appearing to have been made in trust for, or to the use of any other person, and it not being conditional.

9. **Damages—Costs—Depositor's Suit Against Drawee of Forged Check—Attorney's fee, Recovery of in Subsequent Suit Against Endorser.**

Attorney's fees and costs recovered in a suit by a depositor to recover the amount of his deposit in a bank, which had paid out such amount upon a forged check, are not recoverable as damages in a subsequent suit by said bank against the en-
dorser of the check; the original action not having been found-
ed upon warranty of genuineness of drawer's signature to the check; such depositor not being concerned with such warranty, nor was his right of action dependent thereon, but being de-
pendent upon his claim as depositor.

Whiting, J., concurring in the result.

Appeal from Circuit Court, Brule County. Hon. FRANK B. SMITH, Judge.

Action by the First National Bank of Pukwana, against the Brule National Bank of Chamberlain, to recover upon defendant's endorsement of a forged bank check. From a judgment for plaintiff, and from an order denying a new trial, defendant appeals. Judgment modified, and, as modified, affirmed.

*Brown & Brown,* for Appellant.

*H. E. Hitchcock,* for Respondent.

(1) To point one of the opinion, Appellant cited: Greenwald v. Ford, 21 S. D. 28; Ellis v. Ohio L. Ins., etc., Co., 4 Ohio St. 628, 64 Am. Dec. 610.

Respondent cited: Welch v. Goodwin, 123 Mass. 71, 25 Am. Rep. 24; Merchants' Bank v. National Bank of Commonwealth, 139 Mass. 513, 2 N. E. 89.

(3) To point three of the opinion, Appellant cited: Note to First National Bank v. Bank of Wyndmere, (N. D.) 10 L. R. A. (N. S.) 49; Price v. Neale, 3 Burr, 1354; First National Bank v. First National Bank; (Ohio) 50 N. E. 722; Ellis v. Ohio L. Ins. Co., 4 Ohio St. 628, 64 Am. Dec. 610.

Respondent cited: First National Bank v. City National Bank (Mass.) 94 Am. St. Rep. 637; 2 Morse on Banks and Banking, (4th ed.) No. 464; National Bank of North America v. Bangs, 8 Am. Rep. 349; 5 Cyc. 546; State National Bank v. Freedman's Saving & Trust Company, 2 Dillon (U. S.) 11.

(8) To point eight of the opinion, Appellant cited: Laws 1913, Chap. 279, Secs. 118, 119.

Respondent cited: Laws 1913, Chap. 279, Secs. 65, 69.

(9) To point nine of the opinion, Respondent cited: First National Bank v. City National Bank, (Mass.) 94 Am. St. Rep. 637; Rectenbaugh v. Northwestern Port Huron Co., 22 S. D. 410.

SMITH, J. The facts material to a determination of the rules of law applicable in this case are undisputed, and are substantially as follows: One George Kost, a Greek laborer, was employed as one of a track gang on the Chicago, Milwaukee & St. Paul Railway near Pukwana in Brule county. On July 21, 1913, Kost made a deposit of $200 in the First National Bank of Pukwana. He was identied by the foreman of the track gang; said he could not write. The bank entered the deposit in the ordinary bank passbook and delivered the book to Kost. On

August 20, 1913, Kost made another deposit of $170 which the bank also entered in the passbook. On September 9, 1913, two men appeared at the Brule National Bank of Chamberlain and talked with Pilger, the cashier. One of them had in his possession the passbook containing the deposit entries above mentioned. The man who accompanied him said his name was Albers; that he was foreman of the gang; that the man with him was George Kost; that Kost could not speak or write the English language; that the men were not going back to Pukwana, and Kost wanted to get his money from the bank there. Pilger told them he could not give Kost the money then, but would take Kost's check and put it through, and if the Pukwana bank paid it, Kost could get the money in a few days. Pilger, the cashier, then wrote a check which was filled up as follows

"Pukwana, S. Dak. 9-9-1913.

"First National Bank of Pukwana.

"Pay to the order of Brule National Bank, $370.00, three hundred seventy and no 100 dollars.

His
X George Kost.
mark

"Witness to mark    George F. Pilger."

This check was indorsed "Brule National Bank, Chamberlain, S. D.," and delivered to the Whitbeck National Bank of Chamberlain which was used as a clearance bank for other banks. The check was marked

"Paid, Sep. 1913," and the Brule National Bank given credit therefor in clearance.

The check was indorsed by the clearing bank:

"Pay any bank or banker, or order. The Whitbeck National Bank, Chamberlain, S. D.   A. C. Whitbeck, Cashier."

The check was credited to the Brule county bank, and charged in clearance against the Pukwana bank. It was stamped by the latter bank as follows:

"The First National Bank, Pukwana. Paid Sept. 10, 1913."

The amount of this check was paid by the Brule National Bank of Chamberlain, on September 12, 1913, to the person who signed the check by mark, and represented himself to be George

26—Vol. 38, S. D.

Kost. The check was a forgery. In October, 1913, the true George Kost demanded payment of the amount of his deposit, which was refused by the First National Bank of Pukwana. He thereupon instituted suit, and in June, 1914, recovered judgment against the Pukwana bank. This judgment was for $370., the amount of the deposit, with 7 per cent. interest from October 27, 1913, the date of the demand, and with costs added, amounted to $415.62, which sum was paid by the First National Bank of Pukwana, on July 29, 1914, in full satisfaction thereof. In October, 1913, about the time the Pukwana bank learned of the forgery, it tendered to the Brule National Bank of Chamberlain the forged check, and demanded repayment of the $370 which was refused. The First National Bank of Pukwana thereupon instituted this action against the Brule National Bank of Chamberlain, and on April 16, 1915, recovered judgment in the sum of $417.97, the amount of the judgment paid to Kost by the Pukwana bank, with interest, together with the sum of $56.35, paid for costs and attorney's fees by the Pukwana bank in defending that action. From this judgment and an order denying a new trial, defendant appeals.

Appellant assigns as error the allowance as damages of the amount expended by plaintiff for costs and attorney's fees in the case of Kost against the Pukwana bank, in the reception and exclusion of certain evidence, and insufficiency of the evidence to sustain the decision and judgment. It is appellant's contention that under the facts disclosed the plaintiff is not entitled to recover anything whatever. Appellant founds this contention upon what it concedes to be an exception to a general rule. The exception as stated in appellant's brief is that:

"Where a bank pays money on an instrument, purporting to be signed by one of its own customers, it is not entitled to recover the money so paid, because it is held that it is in a better position than any one else to know the genuineness of its customer's signature."

[1] Appellant, however, concedes that this exception, thus broadly stated, is not generally recognized at the present time. The courts generally take cognizance of a distinction between forgeries, commonly so called, of indorsements on instruments otherwise valid, or cases in which a genuine instrument has been

raised in amount by means of a forgery, and those cases in which the signature to the original instrument is a forgery. As pointed out in the note appended to the case of First National Bank v. Bank v. Wyndmere, 15 N. D. 299, 108 N. W. 546, 10 L. R. A. (N. S.) 49, 125 Am. St. Rep. 588, the two classes of cases first named are said to be governed by the rules of law permitting recovery of money paid under mutual mistake, while the latter class is controlled by the rule relating to commercial paper. In the absence of statute establishing a different rule, recovery by the negotiator and indorsers upon the implied warranty of genuineness of a negotiable instrument is held, in many cases, to be limited or controlled by the doctrine of estoppel. And it has been held in a variety of cases that the drawee, who by payment or acceptance or other act has induced the original indorser to change his position to his prejudice, is estopped to recover upon the implied warranty as first indorser or negotiator. On the other hand, it has been held that the original payee or indorser, who by his act has induced the drawee to relax his vigilance in his duty to satisfy himself of the genuineness of the signature of his own depositor, is estopped when he seeks to defend an action by the drawee to recover the amount paid upon a forged draft or check purporting to be signed by his own depositor. In some cases it has been held that the mere act of payment by the drawee estops him from recovering in an action upon the implied warranty of genuineness. But in many of these cases this general rule has been limited by applying it only to forged checks or drafts in the hands of innocent holders in due course, for value, holding that such warranty did not apply to indorsements merely for collection or to transfer title. First National Bank v. Northwestern National Bank, 152 Ill. 296, 38 N. E. 739, 26 L. R. A. 289, 43 Am. St. Rep. 247. The great diversity in rulings, principles, and reasoning in the decisions of the courts of the various states has finally resulted in the adoption, in a great majority of states, of what is known as the Uniform Law of Negotiable Instruments. This law was adopted in this state as chapter 279, Laws 1913. Section 65 of that act declares that:

"Every person negotiating an instrument by delivery or by qualified indorsement, warrants:

"1. That the instrument is genuine and in all respects what it purports to be."

Section 38 defines the term "qualified indorsement" as thus used, to be an indorsement which "constitutes the indorser a mere assignor of the title to the instrument."

Section 30 declares that an instrument is "negotiated when it is transferred from one person to another in such manner as to constitute the transferee the holder thereof," and, if payable to crder, is "negotiated by indorsement of the holder, completed by delivery."

[2, 3] Section 65 evidently was intended to create a broader warranty than that created by section 66, and we incline to the view that these two sections and other sections of the act must be construed together in an attempt to ascertain the true intent of this new legislation. Prior to this enactment the courts quite generally held that the implied warranty of genuineness of the signature of the drawer did not extend to the drawee, who was held to be charged with knowledge of the signature of the drawer; and it was held that when a forged instrument had been paid by the drawee, he must bear the loss, in the absence of con-duct on the part of the payee which would create an estoppel in favor of the drawee. As above suggested, however, the rule in relation to forged indorsements and raised instruments was dif-ferent. In New York it was ruled that an indorser was held to a knowledge of his own title and the genuineness of all prior indorsements, and every part of the bill, except the signature of the drawer. State Bank v. Bank of Omaha, 87 Neb. 351, 127 N. W. 244, 29 L. R. A. (N. S.) 100; White v. Continental Nat. Bank, 64 N. Y. 316, 21 Am. Rep. 612. See note to Ford v. People, 7 Am. & Eng. Ann. Cas. 746; note to 10 L. R. A. 49. There is, however, a line of decisions holding that the original payee by indorsing the instrument impliedly warrants, not only to subsenquent holders in due course, but also to the drawee, that the maker's signature is genuine. Birmingham Nat. Bank v. Bradley, 103 Ala. 109, 15 South. 440, 49 Am. St. Rep. 17; Daners First Nat. Bank v. Salem First Nat. Bank, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450; Germania Nat. Bank v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 Am. St. Rep. 519; People's Bank v. Franklin Bank, 88 Tenn. 299,

12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884; Nat. Bank
of N. A. v. Bangs, 106 Mass. 441, 8 Am. Rep. 349; Warren-
Scharf Asphalt Paving Co. v. Comm. Nat. Bank, 38 C. C. A.
108, 97 Fed. 184. Section 65, supra, we think recognizes and
adopts the rule anounced in these cases. A review of these
decisions, or of those holding that such warranty extends only to
indorsees for value in due course, would serve no useful purpose,
and would extend this decision beyond reasonable limits.

It will suffice to say that we are clearly of opinion that sec-
tions 65 and 66 of the Negotiable Instruments Act, supra, estab-
lish the law in this state, and that the Brule National Bank, by its
general indorsement as payee, warranted to the First National
Bank of Pukwana that the signature of George Kost upon the
check was genuine, and that, in the absence of any act or change
of conditions on the part of the latter bank, sufficient to create
an estoppel, the former bank is entitled to recover the amount of
the forged check, upon such warranty. Gabay v. Doane, 66
App. Div. 507, 73 N. Y. Supp. 381.

The New York Courts have held, interpreting the Uniform
Negotiable Instrument Law as declaratory of the rule in force in
that state prior to its adoption, that the warranty of the genuine-
ness of the signature of the drawer does not extend to the
drawee, but exists only in favor of subsequent holders in due
course for value, upon an unqualified indorsement. Farmers'
Bank v. Rutherford Bank, 115 Tenn. 64, 88 S. W. 939, 112 Am.
St. Rep. 817. But we are of the view that under section 65 an
action upon the warranty may be maintained against the party
"negotiating" the instrument, either by indorsement or delivery.
The two causes of action, one upon the contract of indorsement,
the other upon the warranty, are distinct. The right of action
against him as indorser is limited by the provisions of section
66, and extends only to subsequent holders in due course. In
such an action, no recovery can be had against the drawee, for
the simple reason that he is not and cannot become a holder in
due course. It has been so held in many cases.

[4, 5] But under section 65, the contract of warranty exists,
or is created by the statute, as against one who negotiates the
instrument, and it is immaterial whether it be by indorsement
and delivery, or by delivery without indorsement. Where the

instrument is negotiated by delivery only, the contract of warranty extends in favor of no holder other than the immediate transferee. Section 65, subd. 4. The negotiator of the instrument, under the correct interpretation of this section, is the person who, either by indorsement or delivery, first puts the instrument into the ordinary channels through which commercial paper goes into circulation. The warranty intended arises upon his act, and not upon his relation to the instrument in any other respect. His obligation of warranty is not limited by the language of the statute to holders in due course, and therefore extends not only to subsequent holders in due course, but to the drawee. This distinction differentiates the two sections, and explains the reason for placing them both in the same statute. Neal v. Colburn, 92 Me. 139, 42 Atl. 348, 69 Am. St. Rep. 495; Farmers, etc., Bank v. Rutherford, 115 Tenn. 64, 88 S. W. 939, 112 Am. St. Rep. 817, and cases cited supra.

But section 66, which is an adoption of rules quite universally recognized in commercial law, limits the warranty of genuineness as well as the contract of indorsement, as distinct obligations, to subsequent holders in due course. The drawee is not, and cannot become, a holder in due course, and for that reason the warranty created by that section does not extend to him. National Bank v. Bangs, 106 Mass. 441, 8 Am. Rep. 349. See note 10 L. R. A. (N. S.) 51(b). This rule is based upon the assumption that the holder of a negotiable instrument who simply presents it for payment makes no representation as to the genuineness of the signature. Dedham Nat. Bank v. Everett Nat. Bank, 177 Mass. 392, 59 N. E. 62, 83 Am. St. Rep. 286.

[6] Appellant, however, conceding that the negotiator warrants the genuineness of the signature of the drawer, contends that such warranty is released when the drawee pays or accepts the instrument, citing, among others, the cases of Title Guaranty & Trust Co. v. Haven et al., 126 App. Div. 802, 111 N. Y. Supp. 305 (reversed in Id., 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L. R. A. [N. S.] 1308, 17 Ann. Cas. 1131), and National Bank of Commerce v. Merchants' Am. National Bank et al., 148 Mo. App. 1, 127 S. W. 429, as sustaining this contention. Both of the states named have adopted the Uniform Negotiable Instrument Law in substantially, if not identically, the same form

in which it exists in this state, and the decisions in both cases are founded upon a construction of provisions in their statutes corresponding to sections 185 and 186 of our Negotiable Instrument Law. These sections read as follows:

"Sec. 185. Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance.

"Sec. 186. Where the holder of a check procures it to be accepted or certified, the drawer and all indorsers are discharged from liablity thereon."

The Missouri court, following the interpretation given them in Title Guaranty & Trust Co. v. Haven, supra, holds that these sections of the act amount to an adoption of the line of decisions founded upon the decision of the English court in Price v. Neal, 3 Burr. 1354, which holds that when the drawee of a check to which the name of the drawer has been forged pays it to a bona fide holder, he is bound by the act, and cannot recover the payment. It will be observed that in all three of these cases the drawee who paid the forged instrument was suing the holder in due course upon the warranty, or the contract of indorsement, and it was held that both the warranty, and the contract of indorsement were discharged by payment or acceptance by the drawee. We have no doubt whatever that section 66, supra, is an adoption of the rule announced in these cases, but as we have endeavored to point out supra they have no application whatever to the liability created by the warranty under section 65. See Haven case, 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L. R. A. (N. S.) 1308. The warranty under that section is an obligation on the part of the negotiator of the instrument, distinct from the contract obligation created by his indorsement, where the instrument is put in circulation by indorsement instead of delivery. And even though the contract of indorsement be held discharged by the operation of section 66, that fact does not affect his liability upon the warranty as negotiator of the instrument.

The New York court, Appellate Division, in the Haven case, supra, interprets the section of their act corresponding to section 62 of our act as a guaranty by the drawee of the genuineness of the signature of the drawer, and holds that payment is equivalent to acceptance. Section 62 reads as follows:

"The acceptor by accepting the instrument engages that he will pay it according to the tenor of his acceptance and admits: 1. The existence of the drawer, the genuineness of his signature, and his capacity and authority to draw the instrument, and, 2. The existence of the payee and his then capacity to indorse."

[7] It is clear that when the drawee accepts an instrument, he becomes obligated as upon contract for its payment; but, as to whether the admission of the facts specified in that section amounts to a guaranty, we are not called upon at this time to express an opinion.

"Title Three" of the Negotiable Instruments Act, comprising sections 182 to 187, inclusive, prescribes the rule applicable to checks as negotiable instruments, and defines the rights of parties thereto, and we are of the view that section 186 excludes the application of section 62 to checks, and for that reason the admissions specified in that section have no application in this case.

Section 186 declares the effect of acceptance or certification of a check, and specifies that the drawer and all indorsers are thereby discharged from liability. We are of the opinion that "payment" is not "acceptance." Acceptance, as defined by section 131, cannot be confounded with payment. Section 112 of the New York act is identical with our section 62. The Haven Case, 196 N. Y. 487, 89 N. E. 1082, 1085, 25 L. R. A. (N. S.) 1308, involved payment of a forged check. That court said:

"Section 112 of the Negotiable Instruments Law upon which the referee based his decision has nothing to do with the question."

Acceptance, certification, or payment of a check, by the express language of the statute, discharges the liablity only of the persons named in the statute, to-wit, the drawer and all indorsers, and the contract of indorsement by the negotiator of the check is discharged by acceptance, certification, or payment. But clearly the statute does not say that the contract of warranty of the negotiator, created by section 65 is discharged by these acts.

[8] We are clearly of opinion, therefore, that the warranty of genuineness arising upon the act of the Brule National Bank in putting the check in circulation was not discharged by payment of the check by the drawee, nor was the Brule National Bank

deceived or misled to its prejudice by such payment. The Brule National Bank by its indorsement and delivery warranted its own identification of Kost and the genuineness of his signature. The indorsement of the check by the Brule National Bank was such as to assign the title to the check to its assignee, the Whitbeck National Bank, and the amount was credited to the indorser. The check bore no indication that it was deposited for collection, and was not in any manner restricted so as to constitute the indorsee the agent of the indorser, nor did it prohibit further negotiation of the instrument, nor did it appear to be in trust for, or to the use of, any other person, nor was it conditional. Certainly the Pukwana Bank was justified in relying upon the warrant of genuineness, which implied the full identificaton of Kost, and his signature by the defendant bank. This view of the statute is in accord with the decisions of many courts. First Nat. Bank v. State Bank, 22 Neb. 769, 36 N. W. 289, 3 Am. St. Rep. 294; First Nat. Bank v. First Nat. Bank, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450; People's Bank v. Franklin Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 727, 17 Am. St. Rep. 884.

An interesting historical side light is thrown upon banking customs in the matter of restricting indorsements along the line of the New Negotiable Instruments Act, by the case of Belmont First National Bank v. Barnesville First Nat. Bank, 58 Ohio St. 207, 50 N. E. 723, 41 L. R. A. 584, 65 Am. St. Rep. 748, which states that the banking business of the country is now done almost universally upon unrestricted indorsements.

[9] Did the trial court err in allowing attorney's fees and costs incurred in the action of Kost v. Pukwanna Bank, as part of plaintiff's damages? It is respondent's contention that the defendant bank, upon notice of the action, should have defended against Kost's claim. This view cannot be sustained. Respondent's error lies in the assumption that Kost's action was in some way connected with or founded upon the warranty of genuineness of the drawer's signature to the check, by means of which the money was obtained from plaintiff bank, and that Kost was in some way connected with the warranty. Kost was in no manner concerned with the warranty, nor was his right of action dependent thereon. His action against the Pukwana Bank was

upon his claim as depositor to recover the amount of his deposit. The only possible defense to that action was that Kost had received the money—a question of fact upon which the defendant's cashier or any other person connected with the transaction might have been called as a witness—but which had no connection with the warranty involved in this action. It might possibly be that if in this action upon the warranty the defendant bank had given notice to the drawer of the check to appear and make defense and he had failed to do so, the bank in an action against him might recover the amount necessarily expended in defending the action—a matter we do not decide. But this is not such a case. We reach the conclusion that the Pukwana bank is entitled to recover from appellant bank the amount paid on the forged check, with interest from the date of demand, but that the trial court erred in allowing attorney's fees and costs in Kost's action as damages. This does not necessitate a new trial, however, as the amounts thus erroneously allowed appear from the record, and the error can be corrected by modification of the judgment to conform to these views. As thus modified, the judgment is affirmed. No costs to be taxed in this court.

WHITING, J., concurs in result.