## McKLEROY & BRADFORD *v.* SOUTHERN BANK OF KENTUCKY.

The acceptance of a bill of exchange admits the genuineness of the drawer's signature, and where an acceptor has paid to a *bona fide* holder of a forged draft or bill, having no notice of the forgery, he cannot recover back the money paid.

But where a party becomes the holder of such a draft, before it has been accepted, and when the loss had already attached, it was accepted, and paid, and the acceptors, immediately upon ascertaining the fact of the forgery, gave notice of this fact to the holders—*Held:* That such a case is an exception to the general rule, and the acceptors are not estopped from proving the forgery, and recovering the money they had paid through error.

APPEAL from the Fourth District Court of New Orleans, *Price*, J.
*Clark & Bayne*, for plaintiffs and appellants. *Thomas Hunton*, for defendants.

LAND, J. The evidence in this case establishes the following facts, viz:

The plaintiffs were the factors of *James Smith*, a cotton planter, residing in the State of Arkansas. One *John Zimmer*, who had for a few months been a private tutor in *Smith's* family, assuming the name of *John Belmont, forged a draft* on the plaintiffs, in the name of *Smith*, as follows:

$986.                                    " Homestead, November 5th, 1857.

On the 15th December, 1857, pay to the order of *John Belmont* nine hundred and eighty-six dollars, value received, and charge the same to the account of                                    JAS. SMITH.

To Messrs. *McKleroy & Bradford*, New Orleans, La."

*Zimmer* also forged a letter of introduction, in the name of *Smith*, to *Shotwell & Son*, of Louisville, Kentucky, as follows:

" Homestead, Nov. 5th, 1857.

*Messrs. Shotwell & Son.*

Gentlemen:

I introduce to you *Mr. John Belmont*, a gentleman who resided in my family as our tutor. Having been sick, he is now travelling to improve his health. I gave

*Smith, you were a dandy.*

him a draft on *McKleroy & Bradford,* my commission house in New Orleans, which he is desirous to get cashed in your city. If you can give *Mr. Belmont* any assistance, by perhaps recommending my draft, as *Mr. Belmont* is a stranger in your city, and not yet fully recovered, you will greatly oblige me.

I am, gentlemen, yours respectfully,

JAMES SMITH."

The house of *Shotwell & Son* had been in correspondence with *James Smith* for about twelve years; and being deceived by the forger, *endorsed the draft* for the purpose of enabling the holder to negotiate it. The draft bearing the endorsements of *John Belmont* and of *Shotwell & Son,* was presented for discount at the Branch of the Southern Bank of Kentucky, and being considered good, was purchased by the bank. The draft was remitted to the Louisiana State Bank, with the following additional endorsement upon it—"*Pay to R. J. Palfrey, cashier, J. B. Alexander, cashier.*" *The draft thus endorsed,* was presented to plaintiffs for acceptance by the Louisiana State Bank, and was accepted on the last of November, or first of December, and was paid at maturity, on the eighteenth of December, 1857, by the plaintiffs to the agent of the Southern Bank of Kentucky. In January, 1858, *James Smith,* being in the city, made known to the plaintiffs, upon an examination of his account with them, that the draft was a forgery. *Mr. Shotwell,* of the house of *Shotwell & Son,* was in this city at the time, and was immediately sent for, and the fact of forgery communicated to him. On the 9th of January, 1858, the plaintiffs gave formal notice by letter, of the forgery, to *A. L. Shotwell & Son,* to the Southern Bank of Kentucky, and also the Louisiana State Bank.

This suit was instituted by the plaintiffs to recover back the money paid on the draft, on the ground of *payment in error.*

There was judgment for the defendant, and the plaintiffs have appealed.

The District Judge held, that the acceptance of a bill of exchange admits the genuineness of the drawer's signature, and that where an acceptor has paid to a *bona fide* holder of a forged draft or bill, having no notice of the forgery, he cannot recover back the money paid, although the forgery is established by the most conclusive evidence. And where one of two innocent persons must suffer, he who has misled the other, or has omitted his duty, must bear the loss.

These principles of law are well established, and admit, perhaps, of neither doubt nor controversy, and if applicable to this case, must determine the rights of the parties.

The defendant *became the holder* of the draft, *before it was accepted by the plaintiffs,* and *before they had any knowledge of its existence,* and consequently, before the defendant *had any right of action against them for its recovery.* The plaintiffs, therefore, *had done no act* which induced the defendant to believe the signature of the drawer to be genuine, *at the time the bill was purchased.* How, then, can it be said that the defendant purchased the bill *on the faith of the plaintiffs' acceptance,* or *on their guarantee of the genuinenes of the drawer's signature?* Or how can it be said that the plaintiffs *misled the defendant* at the time of the purchase of the bill, or *was then guilty of the omission of any duty* toward the defendant as *the purchaser of the bill?*

If the defendant had purchased the bill on the faith of the acceptance of plaintiffs, or had sustained any loss in consequence of *their negligence,* we would have no difficulty in affirming the judgment of the lower court; but such are not the facts made known to us by the record.

The defendant purchased the bill on the faith of the endorsement of *Shotwell &
Son*, which was a warranty of the genuineness of the drawer's signature to the
bank; and there is no good reason, why the accidental payment made by the
plaintiffs should inure to the benefit of the defendant.

Mr. Chitty says on this subject, "if he (the holder) thought fit to rely on the
*bare representation of the party from whom he took it*, (the bill), there is no reason
that he should profit *by the accidental payment, when the loss had already attached
upon himself*, and why he should be allowed *to retain the money*, when, by an
*immediate* notice of the forgery, he is enabled to proceed against all other parties,
precisely the same as if the payment had not been made, and consequently, the
payment to him has not in the least altered his situation, or occasioned any delay
or prejudice. It seems that, of late, upon questions of this nature, these latter
considerations have influenced the court in determining whether, or not, the
money shall be recoverable back; and it will be found, on examining the older
cases, that *there were facts affording a distinction*, and that upon attempting to
reconcile them, they are not so contradictory as might on first view have been
supposed." Chitty on Bills, 464.

The facts in this case *afford the distinction* to which Mr. Chitty refers, and takes
the case out of the general rule, which prevents the acceptor of a bill of exchange
from recovering back the money paid in cases of forgery of the drawer's signa-
ture.

*The loss had already attached, before the bill was either accepted or paid*, and the
acceptors gave *immediate notice to the defendant*, and *Shotwell & Son*, after ascer-
taining for the first time, from *James Smith*, in whose name the bill was drawn,
*the fact of forgery*.

The evidence shows, that plaintiffs accepted the bill, in the language of the wit-
ness, "*chiefly through the respectability of the channels through which it came*."
It is, therefore, difficult to conceive upon what principle of equity or right the
defendant can be permitted to retain the money paid in error by the plaintiffs,
*upon the facts of this case*. No authority applicable to the *particular circum-
stances of this case* has been cited by the defendant's counsel, and we have no
hesitation in reversing the judgment upon the authority of Mr. Chitty, above
quoted.

In a case like the present, the acceptor is not estopped from proving the for-
gery of the bill.

It is, therefore, ordered, adjudged and decreed, that the judgment of the lower
court be avoided and reversed; and it is now ordered, adjudged and decreed,
that the plaintiffs do have and recover of the defendant the sum of nine hundred
and eighty-six dollars, with five per cent. per annum interest, from the 18th day
of December, 1857, with costs in both courts.