The First Nat'l Bank of Crawfordsville *v.* First Nat'l Bank of Lafayette.

## No. 22.

## THE FIRST NATIONAL BANK OF CRAWFORDSVILLE *v.* THE FIRST NATIONAL BANK OF LAFAYETTE.

BANKS.—*Forged Order for Money.*—*Discount of by Bank.*—*Payment of by Bank on which it was Drawn.*—*Recovery of Amount so Paid.*—Where a forged instrument of writing for the payment of money drawn on a bank in C. was indorsed in blank by the party who had forged the same, and was discounted by a bank in L., and was sent by the latter bank to its correspondent at C., endorsed " for collection," and was paid by the bank at C., the amount so paid by the bank at C. may be recovered by it from the bank at L., as the endorsement of said bank, whatever its purpose, would tend to divert inquiry and scrutiny on the part of the bank at C. and would give to the paper the appearance of a genuine transaction. The fact that the paper was endorsed for collection can not materially affect the question of laches.

SAME.—*Notice to Bank Discounting, of Forgery.*—*Complaint.*—*Answer.*—Where the complaint in such action alleged that the defendant was notified by the plaintiff of the forgery as soon as it learned the fact, an answer averring that the defendant was not notified of the forgery, and did not have any knowledge of it for twenty days after the payment was made by the plaintiff's bank, does not state a good defence to the complaint. What is a reasonable notice depends upon the circumstances of the case. Mere space of time is not important unless it be made clearly to appear that the defendant will be put to more liability, trouble or expense by a restitution then than if notice had been received earlier.

From the Carroll Circuit Court.

*J. E. Humphries, G. W. Paul, W. W. Thornton, W. E. Humphrey* and *W. M. Reeves,* for appellant.

*J. R. Coffroth* and *T. A. Stuart,* for appellee.

NEW, J.—This action was commenced in the Tippecanoe Circuit Court, and the venue was changed to the Carroll Circuit Court.

The appellant was the plaintiff below. The action is to recover money alleged to have been paid by the appellant to the appellee on a forged instrument of writing.

The complaint contains two paragraphs. The first is as follows, the caption omitted:

"The plaintiff complains of the defendant, and says that on the 4th of January, 1884, the defendant obtained from the plaintiff the sum of three hundred and forty-nine dollars and ninety-two cents, by means of the following forged, fictitious and counterfeit writing, to wit:

| $ 25 92 | Office of Township Trustee, |
| 324 00 | Franklin School Township, |
| ——— | Montgomery County, September 1st, 1882. |
| $349 92 | |

"'This certifies that there is due from this township to A. S. Griswold, or order, three hundred and twenty-four dollars, payable out of the special school fund, January 1st, 1884, with interest at 6 per cent. annum, payable at First National Bank, Crawfordsville, Ind.

"' CHAS. JOHNSTON,<br>"'<i>Trustee Franklin School Township.</i>'

"Which said fictitious and forged writing said defendant endorsed and presented to the plaintiff at its banking house, in Crawfordsville, Indiana, and received payment thereof in said sum above named from the plaintiff.

"The plaintiff further avers that said Charles Johnston was, September 1st, 1882, trustee of Franklin school township, in Montgomery county, Indiana, and was, on January 4th, 1884, a customer of the plaintiff, and had his funds and moneys deposited with the plaintiff, and had in the plaintiff's bank more than money enough to pay the aforesaid writing. Said defendant presented, and caused to be presented to the plaintiff, at its banking house aforesaid, said writing, with the following endorsements on the back thereof, to wit: 'A. S. Griswold. Pay to the order of B. Wasson, C., for collection for acct. of the Indiana National Bank, Lafayette, Ind. J. C. Brockenbrough, cashier;' and upon the faith of said endorsement of the defendant, and agreement with said Johnston, that said Johnston instructed plaintiff to pay off any note or order or warrant given by him as trustee, and that whenever he was in the city he would pay to plaintiff

the money so advanced. The plaintiff, supposing the said writing and endorsement to be genuine, paid and took up said writing, or note, for the accommodation of said Charles Johnston, as trustee, and paid said sum of money, to wit, $349.92, to the Citizens' National Bank, of Crawfordsville, Indiana, who held said writing or note for collection by virtue of said endorsement to said B. Wasson, who was at the time of said endorsement, to wit, prior to January 4th, 1884, and now is, the cashier of said Citizens' National Bank ; and said Citizens' National Bank, as the collecting agent of the defendant, received said money so paid by the plaintiff, and paid the same to the defendant, in whose possession it now is, said defendant claiming the same as its own money and property ; that the plaintiff did not know said instrument was a forgery at the time it was paid, and as soon as it learned the fact it notified the defendant.

" The plaintiff further alleges that, previous to the bringing of this action, to wit, on January 31st, 1884, it, the plaintiff, demanded said money, to wit, $349.92, of said defendant, at the same time and place, presenting the writing, or notes, as aforesaid set out, at its banking house in Lafayette, Indiana, during banking hours, together with an affidavit of said Charles Johnston, such trustee, that said writing or note was and is a forgery, and was never executed by him ; but the defendant refused to pay back said sum, or any other amount, or any part thereof. At the time of making said demand said plaintiff tendered back to the defendant said forged writing or note, then and there making it acquainted and informing it of the aforesaid facts.

"At the time said note was presented to the plaintiff for payment it, the plaintiff, supposed said writing or note was a valid obligation duly signed and executed by the said Charles Johnston, and relying upon that supposition, and further relying upon the defendant's endorsement on said writing or note, then giving it currency and credit as a valid and subsisting obligation, it, the plaintiff, paid said sum of

money to the defendant, or to its collecting agent as aforesaid stated.

"Said writing or note is in fact counterfeit, false, forged and spurious, and of no value whatever, and said Charles Johnston refuses to accept the same, or to extend to the plaintiff any money or credit by reason of said payment.

"Wherefore, on account of the aforesaid reason and facts, the plaintiff says said defendant is indebted to the plaintiff in the sum of $349.92 for money had and received by the defendant for the use and benefit of the plaintiff, which sum is due and unpaid," etc.

The second paragraph is in form the common count for money had and received.

The answer to the complaint is in two paragraphs, the first being a general denial.

The second paragraph is as follows: "And for a further answer to the first paragraph of said complaint, the defendant says: That on the —— day of June, 1883, the said A. S. Griswold, he being the same person who is mentioned in said complaint as the payee of said alleged certificate of indebtedness, was a person of good standing for integrity at the city of Lafayette, in the State of Indiana, and had been doing business thereat, and at the time aforesaid was introduced to the defendant as such by a gentleman of social and business standing and respect in said community, and in whom the defendant had full confidence; that at and before said time this defendant was a national banking association at said city of Lafayette, pursuant to the act of Congress for the organization of national banks, and was engaged in the discounting of notes, bills and other evidences of indebtedness, and also in a general banking business.

"That at the time aforesaid, and after the introduction aforesaid, the said Griswold offered to this defendant the certificate of indebtedness described in the complaint for discount, and asked the defendant to discount the same for value; that this defendant, believing said certificate to be

genuine and in all respects good and valid, and having theretofore purchased similar certificates, and having always found them to be valid, did purchase from said Griswold said certificate described in the complaint, and did pay him therefor the sum of three hundred and twenty-four dollars, and thereupon said Griswold did endorse said certificate to this defendant by writing his name across the back thereof, and did deliver the same to this defendant; that at said time said Charles Johnston, the apparent maker of said certificate, resided in the adjoining county of Montgomery, and his handwriting was unknown to this defendant.

"That at the maturity of said certificate, the defendant, still believing that said certificate was genuine and valid, sent the same for collection to its correspondent and agent, the Citizens' National Bank of Crawfordsville, located in said county of Montgomery, and endorsed the same for collection; that on the day of the maturity of said certificate of indebtedness, to wit, on the 4th day of January, 1884, the said Citizens' National Bank, supposing the same to be genuine, presented said certificate at the banking house of said plaintiff, being the same place at which it was made payable, and said plaintiff thereupon paid the same to said Citizens' Bank, and it afterwards paid the same to this defendant.

"That afterwards, on the 31st day of January, 1884, and not before, said plaintiff notified this defendant that said certificate was a forgery, and that never before had this defendant any knowledge, information or suspicion that said certificate was not genuine or invalid for any cause."

To this paragraph of the answer a reply was filed of two paragraphs, the first of which was a general denial. The second paragraph, in its leading averments, is not unlike the first paragraph of the complaint. We do not find it necessary to set it out.

The cause was tried by the court, and at the request of the appellant a special finding of facts was made, with state-

ment of conclusions of law, the latter being in favor of the appellee and excepted to by the appellant.

Judgment was rendered in the appellee's favor for costs.

The appellant assigns error upon the overruling of the demurrer to the second paragraph of the answer and upon the conclusions of law.

The rule as generally stated in the decided cases is, that a bank in accepting and paying a check or paper presented to it is held to know the signature of the drawer and is not at liberty afterwards, in a controversy between it and an innocent holder, to dispute the drawer's signature. And, therefore, if the signature of the drawer is on a subsequent day discovered to be a forgery, the bank can not compel the holder to whom the payment was made to restore the money unless the holder be in some way implicated in fault. This rule is founded upon the supposed negligence of the bank in failing, by an examination of the signature, when the paper is presented, to detect the forgery and refuse payment. The bank is presumed to know the handwriting of the drawer, and, therefore, as between them, the bank must, because of its imputed negligence, bear the loss, if the holder was innocent of contribution to this mistake. *Price* v. *Neal*, 3 Burr. 1354; *United States Bank* v. *Bank of Georgia*, 10 Wheaton, 333; *Smith* v. *Mercer*, 6 Taunt. 76; *Bank of Gloucester* v. *Salem Bank*, 17 Mass. 33; *Bank of Commerce* v. *Union Bank*, 3 Comstock, 230; *Goddard* v. *Merchants' Bank*, 4 Comstock, 147; *National Park Bank* v. *Ninth National Bank*, 46 N. Y. 77; *National Bank of Commerce* v. *National, etc., Ass'n*, 55 N. Y. 211; *White* v. *Continental, etc., Bank*, 64 N. Y. 316; *Reddington* v. *Woods*, 45 Cal. 406; *Bernheimer* v. *Marshall*, 2 Minn. 78; *Ellis* v. *Ohio, etc., Co.*, 4 Ohio St. 628; *Johnston* v. *Commercial Bank*, 27 W. Va. 343; *Rouvant* v. *San Antonia National Bank*, 63 Tex. 610; *First National Bank* v. *Ricker*, 71 Ill. 439; *Levy* v. *Bank of United States*, 4 Dall. 234.

While the rule will generally be found thus stated, it is

very manifest that the courts have shown a steadily increasing disinclination to extend by analogy the doctrine laid down in *Price* v. *Neal, supra,* and the cases following it, to other cases resting upon facts substantially different. Indeed, the rule, as we have given it, and as it is generally found to be stated, has been vigorously assailed by standard authors, as a rule too favorable to the holder, not the most fair nor best calculated to effectuate justice between the drawee and the drawer. 2 Daniel Negotiable Instruments (4th ed.), section 1361, 1362 ; Chitty Bills (13 Am. ed.), 431, 485 ; 2 Morse Banks and Banking (3d ed.), sections 464, 465, 466.

In the case at bar the forged instrument, as appears by the answer, was put in circulation in the first instance by Griswold, the forger, he indorsing it to the appellee. For the purpose of obtaining the money on it the appellee, after endorsing it, caused it at maturity to be presented to the appellant and received the money on it.

The responsibility of a bank under the rule we have stated is based upon presumption alone, and is decisive only when the party receiving the money has in no way contributed to or promoted the mistake or fraud.

In the case of *National Bank of North America* v. *Bangs,* 106 Mass. 441, it is said :

" In the absence of actual fault or negligence on the part of the drawee, his constructive fault, in not knowing the signature of the drawer and detecting the forgery, will not preclude his recovery from one who has received the money with knowledge of the forgery, or who took the check, under circumstances of suspicion, without proper precautions, or whose conduct has been such as to mislead the drawee, or to induce him to pay the check without the usual scrutiny or other precautions against mistake or fraud. These exceptions are implied by the very terms in which the general rule is ordinarily stated. The case of *Ellis* v. *Ohio, etc., Co.,* 4 Ohio St. 628, is an express decision to that effect, and con-

tains an able and thorough discussion of the subject. We are aware of no case in which the principle that the drawee is bound to know the signature of the drawer of a bill or check, which he undertakes to pay, has been held to be decisive in favor of a payee of a forged bill or check to which he has himself given credit by his endorsement." See, also, *McKleroy* v. *Southern Bank of Kentucky*, 14 La. Ann. 458; *Canal Bank* v. *Bank of Albany*, 1 Hill, 287; *Rouvant* v. *San Antonio Nat'l Bank, supra.*

The appellee's indorsement upon the instrument, whatever may have been the purpose of that endorsement, would tend to divert the appellant from inquiry and scrutiny, for it gave to the paper the appearance of a genuine transaction. The names of Griswold and the appellant on the back of the paper would apparently be inconsistent with any suspicion of a forgery of Johnston's name. The appellee was a bank doing business in an adjoining county. Its endorsement, following that of Griswold, would hardly fail to inspire confidence in the genuineness of the paper—as vouching for it.

It is not shown by the answer that to allow a recovery by the appellant will place the appellee in a worse position than if payment had been refused. In *Ellis* v. *Ohio, etc., Co., supra,* it is said: "To entitle the holder to retain money obtained by mistake, upon a forged instrument, he must occupy the vantage ground, by putting the drawee alone in the wrong; and he must be able truthfully to assert that he put the whole responsibility upon the drawee, and relied upon him to decide, and that the mistake arising from his negligence, can not now be corrected without placing the holder in a worse position than though payment had been refused."

The view that the drawee should be allowed to recover the money, if the position of the holder has remained unchanged, is advocated by Daniel and Morse in the references we have already given. See, also, *Merchants' Nat'l Bank* v. *National Bank of the Commonwealth*, 139 Mass. 513.

But however this may be, we can not say that the appellee's endorsement of the forged instrument did not in some degree induce the payment of the money.

We do not think the allegation in the answer that the paper was endorsed by the appellee " for collection " can materially affect the question of *laches*.

In the case of *National Bank of North America* v. *Bangs*, *supra*, the endorsement was for collection. See, also, *Star*, *etc., Ins. Co.* v. *New Hampshire Nat'l Bank*, 60 N. H. 442.

It is averred in the answer that the payment was made by the appellant to the appellee on the 4th of January, 1884, and that the latter was not informed, nor did it have knowledge of the forgery, until the 24th day of said month. Notice and demand for restitution should be within a reasonable time. What is a reasonable time depends upon the circumstances of the case. Mere space of time is not important unless it be made to clearly appear that the holder will be put to more liability, trouble or expense by a restitution then, than if notice had been received earlier. In the present case the appellee had no endorser behind it but the forger, and, so far as can be known from the answer, any remedy which the appellee may have had against him remains unimpaired.

The forged instrument paid off by the appellant was not negotiable according to the law merchant, although it purported to be payable at a bank. *State, ex rel.,* v. *Hawes,* 112 Ind. 323. Such paper can not be said to be taken, or to circulate, on the intrinsic credit of the instrument itself. This fact, as it seems to us, is not without some weight upon the question of promptness in giving notice. It is alleged in the complaint that the appellee was notified by the appellant of the forgery as soon as it learned the fact. We would not be justified in holding that the averment in the answer respecting notice is a good defence to the complaint. See 2 Daniel Negotiable Instruments (4th ed.), section 1372; 2 Morse Banks and Banking (3d ed.), section 488; *Canal*

*Bank* v. *Bank of Albany, supra; Rouvant* v. *San Antonio Nat'l Bank, supra; Ellis* v. *Ohio, etc., Co., supra; Union Nat'l Bank of Chicago* v. *Baldenwick,* 45 Ill. 375.

The demurrer to the second paragraph of the answer should have been sustained.

Having reached this conclusion, the special finding does not require attention.

The judgment is reversed, with costs.

Filed March 15, 1892.