### FORD & CO. v. PEOPLE'S BANK OF ORANGEBURG.

1. NOTES AND BILLS—DRAFTS.—THE PRESUMPTION that drawer knows the signature of drawee of draft is conclusive only where the party receiving money has contributed in no way to the success of the fraud or the mistake of fact upon which payment was made.
2. IBID.—IBID.—Presentation and unrestricted indorsement tends to mislead drawee into belief that signature to draft was genuine.

Before DANTZLER, J., Orangeburg, July, 1905. Reversed.

Action by B. B. Ford & Co. against Peoples Bank of Orangeburg. From order sustaining demurrer and permitting plaintiff to amend his complaint, both parties appeal.

*Mr. Allen J. Green,* for plaintiff, cites: 12 S. C., 570; 4 Rich., 389; 1 Strob., 287; 8 Ency., 1 ed., 498; 51 Am. St. R., 521, 221; 11 Rich. Eq., 344; 13 S. C., 5; 65 S. C., 45; 1 Dan. Neg. Inst., 669, 669a, 670; 2 Ibid., 1361, 1362, 1113a; 97 F. R., 181; 64 F. R., 703; 64 N. Y., 316; 88 Tenn., 299; 135 Mass., 473.

*Messrs. Glaze & Herbert,* for defendant, cite: 51 Am. St. R., 521; 5 Ency., 2 ed., 1071, 1077, 1078; 88 S. W., 939; Morse on Bank, 462, 463, 858; Edward on Bills, sec. 272, *et seq.;* 66 L. R. A., 599; 63 L. R. A., 245; 41 L. R. A., 584.

April 14, 1906. The opinion of the Court was delivered by

MR. JUSTICE JONES. The appeal in this case is from an order of Judge Dantzler sustaining a demurrer to the complaint with leave to amend. The complaint, omitting formal parts, states the following facts:

"3. That on 6th January, 1904, the defendant, through the usual channels in the course of banking, presented to plaintiff for payment a draft for fifty dollars, dated Neeces, S. C., January 4th, 1904, and purporting to be drawn by H. L. J. Blume on the plaintiffs, payable to the order of Joe Shannahan, indorsed Joe Shannahan and by the defendant, of the tenor following, to wit:

" 'Pay to the order of Joe Shannahan fifty dollars, value received and charge the same to account of

H. L. J. Blume.

" 'To B. B. Ford & Co., Columbia, S. C.       No. 68.'

"4. That the plaintiff paid the said draft upon presentation, upon the faith and credit of the indorsement of the said defendant, supposing said draft to be a genuine draft of H. L. J. Blume, and the money therefor was received by the defendant.

"5. That the said draft was not the genuine draft of the said H. L. J. Blume, but on the contrary his name thereto is a forgery, and upon the discovery of the same, the plaintiffs, on 11th January, 1904, notified the defendant thereof, and demanded the return of the said fifty dollars so paid by the plaintiffs to defendants as aforesaid, but the said defendant refused and still refuses to pay the same."

Judge Dantzler in sustaining the demurrer for insufficiency assigned the following reasons:

"There is no authority in this State decisive of the question presented by the demurrer. The case cited by counsel for plaintiff (*Glenn* v. *Shannon,* 12 S. C., 570), is inapplicable.

"The rule, as settled by the great weight of authority in other States, is that, 'As between parties equally innocent, the loss must remain where the course of business has placed

it.' 5th A. & E. Ency., 2 ed., 1072. That is to say, a drawee becomes chargeable with the knowledge of the signature of the drawer, where a check or draft, upon which the signature of the drawer has been forged, is paid by the drawee, the drawee must bear the loss unless the payee is negligent or at fault.

"The text writers are not in accord with this doctrine, but it seems to be 'firmly rooted in the commercial law of the country,' *Germania Bank* v. *Boutell,* 60 Minn., 189 (reported in 51 Am. St. Rep., 521).

"The rule in relation to forged indorsements is different. A. & E. Ency. Law, vol. 5 (2 ed.), 1079.

"The plaintiffs allege, *inter alia,* that the draft in question was presented to the plaintiffs by the defendants *'through the usual channels in the course of banking.'* (Italics mine.) The draft was placed in the usual course of business, with the plaintiffs, and they, as drawees, paid the money to the defendant; the defendant is not liable, therefore, to the plaintiffs for the money so received, unless negligent or at fault.

"The demurrer must, therefore, be sustained, with leave to the plaintiffs to amend their complaint, if so advised, by incorporating therein as they may be advised, any alleged act or acts of negligence or fault on the part of the defendant respecting the draft in question."

Both sides appeal. The plaintiff contends that the demurrer should not have been sustained, as the case should be governed by the principle announced in *Glenn* v. *Shannon,* 12 S. C., 57, which is: "Where money is paid under a mistake of fact to a person who has no ground in conscience to claim it, the person paying it may recover it back." The plaintiff also contends that if the question of defendant's negligence is involved, the complaint alleges such negligence by stating in effect that the defendant indorsed a forged draft on plaintiff and presented the same so indorsed through the usual channels of banking, and that said draft was paid by plaintiff upon the faith and credit of such indorsement, supposing the draft to be genuine.

The defendant contends that the demurrer should have been sustained absolutely without leave to amend, under the commercial rule that the drawee of a bill of exchange or check is presumed to know the signature of the drawer and cannot recover back the money paid thereon to a *bona fide* holder. The defendant contends that such presumption is conclusive in this case, as the complaint shows that defendant was a *bona fide* holder.

The rule which protects a *bona fide* holder in his right to retain money paid by the drawee upon a bill or check to which the drawer's signature is afterwards discovered to be forged, was first announced by Lord Mansfield in *Price* v. *Neal*, 3 Burr, 1355, decided in 1762, was followed by Justice Story in *Bank of United States* v. *Bank of Georgia*, 10 Wheat., 333, decided in 1825, and has received such recognition in this country as will appear by reference to cases cited in 5 Ency. Law, 1071-1072: *Germania Bank* v. *Boutell*, 27 L. R. A., 635, and note, and in note to *People's Bank* v. *Franklin*, 17 Am. St. Rep., 890. An examination of the case of *Price* v. *Neal, supra,* and of the best considered cases following its doctrine, will show that the question of the holder's fault or negligence in acquiring possession or in his conduct in misleading the drawee into payment or throwing him off his guard, may affect the question whether in equity and good conscience he should be allowed to retain the money. In *Price* v. *Neal*, Lord Mansfield remarked that the holder acquired the bill for value without suspicion of the forgery, was guilty of no fault or neglect, and that if there was any fault or negligence it was on the part of the drawee. We think the true rule is found stated in the case of *National Bank* v. *Bangs,* 106 Mass., 441, 8 Am. Rep., 349, approved in *Bank of Danvers* v. *Bank of Salem,* 151 Mass., 280, 21 Am. St. Rep., 451. The language of the Court in the last cited case, after stating that the presumption is that the drawee bank knows the signature of its own customers, is as follows: "This presumption is conclusive only when the party receiving the money has in

no way contributed to the success of the fraud, or the mistake of fact under which the payment has been made. In the absence of actual fault on the part of the drawee, his constructive fault in not knowing the signature of the drawer and detecting the forgery will not preclude his recovery from one who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the drawee or induce him to pay the check without the usual security against fraud. Where a loss, which must be borne by one of two parties alike innocent of forgery, can be traced to the neglect or fault of either, it is reasonable that it should be borne by him, even if innocent of any intentional fraud, through whose means it has succeeded. To entitle the holder to retain money obtained by a forgery, he should be able to maintain that the whole responsibility of determining the validity of the signature was placed upon the drawee and that the negligence of the drawee was not lessened and that he was not lulled into a false security by any disregard of duty on his (the holder's) own part, or by the failure of any precaution which from his implied assertion in presenting the check as a sufficient voucher the drawee had a right to believe he had taken."

In view of this statement of the rule, the question whether the demurrer was properly sustained depends upon the meaning to be attached to the alleged presentation and *indorsement* of the draft by the defendant. Does such presentation and indorsement to the drawee represent that the signature of the drawer is genuine, or does it merely represent that the instrument is genuine as it purports to be in all respects, except as to the signature of the drawer, which the drawee is presumed to know? Mr. Daniel, in his work on Negotiable Instruments, takes the view that an indorsement engages that the bill or note is genuine—vol. 1, secs. 672, 673; vol. 2, sec. 1361. The case of *Germania Bank* v. *Boutell, supra,* also reported in 51 Am. St. Rep., 579, takes the view that an indorsement by a holder other than the original payee constitutes no represen-

tation or guarantee to the drawee that the signature of the drawer is genuine, but we think that the weight of reason and authority is against that view, at least to the extent that an unrestricted indorsement is calculable to mislead the drawee into a belief that the paper was what it purported to be. *People's Bank* v. *Franklin Bank,* 88 Tenn., 299, 17 Am. St. Rep., 884; *Bank of Danvers* v. *Bank of Salem,* 151 Mass., 280, 21 Am. St. Rep., 450; *First National Bank* v. *First National Bank,* 4 Ind., 355, 51 Am. St. Rep., 227; *Woods & Malone* v. *Colony Bank,* 114 Ga., 683, 56 L. R. A., 933. The case of *National Bk. Belmont* v. *National Bk. Barnesville,* 56 Ohio, 207, 65 Am. St. Rep., 752, while holding that a restricted indorsement as "for collection" has not that effect, apparently concedes that an unrestricted indorsement does have that effect.

From what has been said it must follow that the facts stated in the complaint constitute a cause of action and that the defendant's demurrer should have been overruled.

The judgment of the Circuit Court is reversed.