STATE BANK OF CHICAGO, APPELLEE, v. FIRST NATIONAL BANK OF OMAHA, APPELLANT.

FILED JUNE 29, 1910.   No. 16,097.

1. **Banks and Banking: FORGED DRAFT: PAYMENT: RECOVERY.** Where the payee of an unaccepted draft to which the drawer's name has been forged, and purporting to have been drawn by a bank in South Dakota upon a bank in Illinois, indorses the instrument generally and sells it for its face value to a Nebraska banker with whom the payee is acquainted, the drawee, after paying the bill, cannot recover back the money unless it pleads and proves that the holder was negligent in purchasing the instrument, or in indorsing it, or withheld' from the drawee at the time the bill was paid some information or grounds for suspicion within his knowledge concerning the genuineness of the bill.

2. ——: ——: **DUTY OF PURCHASER.** In such a case the cashing bank, if it acted in good faith in the transaction, is not required, in order to acquit itself of a charge of negligence in purchasing the bill, to prove that before such purchase it inquired of the drawer whether the instrument was genuine, or communicated with the drawee to learn whether the bill would be accepted.

3. ——: ——: **INDORSEMENT.** Where such a draft, by reason of the payee's indorsement, is negotiable by delivery, an indorsement by the holder is not a warranty to the drawee that the drawer's signature is genuine.

APPEAL from the district court for Douglas county: GEORGE A. DAY, JUDGE. *Reversed.*

*Isaac E. Congdon,* for appellant.

*Myron Learned,* contra.

Root, J.

This is an action by the drawee of a forged draft to recover from a holder thereof money paid to satisfy that instrument. The plaintiff prevailed upon the defendant's demurrer to the petition. The defendant appeals.

The plaintiff alleges in its petition that the defendant, through its agent, the Continental National Bank of Chicago, on November 29, 1907, caused to be presented to the plaintiff through the Chicago clearing house a certain draft of which the following is a copy: "$800. The German Bank. No. 9638. Eureka, South Dakota, Nov. 23, 1907. Pay to the order of Chas. Viterna, $800.00, eight hundred dollars. E. Moog, A. Cashier. To the State Bank of Chicago, Chicago, Ill." The instrument was indorsed: "Chas. Viterna." "Pay to the order of Continental National Bank, Chicago, Ill., First National Bank, Omaha, Neb. L. L. Kountze, Cashier." The plaintiff further alleges that, believing the instrument to be the genuine draft of said E. Moog, it accepted the same and paid it to the defendant through the Continental National Bank; "that the defendant, prior to the presentation, acceptance and payment of said draft as hereinbefore alleged, paid to Charles Viterna named in said draft as payee, knowing him to be said Viterna, eight hundred dollars ($800.00), the amount named in said draft, without any knowledge or information as to whether said draft would be accepted or paid by the plaintiff, and without taking any steps to ascertain whether or not said draft was a genuine draft of the above named E. Moog, assistant cashier of the German Bank of Eureka, South Dakota." The plaintiff also alleges the draft was forged, but its true character did not become known until December 12, 1907. Immediately thereafter the plaintiff advised the defendant of said fact and demanded repayment of the $800, which demand was refused. Counsel for the respective litigants stated at the bar that the negotiable instrument statute does not

control this case, and we shall treat their statement as correct for the purposes of this case.

The great weight of authority sustains the proposition that, as between the drawee and a good faith holder of a draft, the drawee bank is to be deemed the place of final settlement, where all prior mistakes and forgeries shall be corrected and settled once for all; and, if not noticed and payment is made, the money cannot be recovered back. *Price v. Neal*, 3 Bur. (Eng.) 1354; *Germania Bank v. Boutell*, 60 Minn. 189. The cases are annotated in a note to *First Nat. Bank v. Bank of Wyndmere*, 10 L. R. A. n. s. 49 (15 N. Dak. 299). Courts and text-writers generally recognize that the preponderance of authority is in favor of the rule, but it seems to conflict with a well-established principle of law that money paid by mistake may be recovered back, and has not been accepted without qualification by all of the American courts. North Dakota refuses to follow *Price v. Neal, supra,* and has held that the principles of equity should control a transaction between the drawee and a holder of a forged check or draft. *First Nat. Bank v. Bank of Wyndmere, supra.* The position assumed by North Dakota is in harmony with suggestions made by many text-writers, but, so far as we are advised, is not sustained by the opinion of any other court. Intermediate the cases adhering to the ancient rule and *First Nat. Bank v. Bank of Wyndmere,* one may find cases qualifying the broad rule promulgated in *Price v. Neal, supra.*

The Massachusetts supreme court hold that the failure of the drawee to detect the forgery at the time the draft is presented and paid will not preclude it from recovering the money from a holder "who took the check under circumstances of suspicion without proper precaution, or whose conduct has been such as to mislead the drawee or induce him to pay the check without the usual security against fraud." *First Nat. Bank v. First Nat. Bank,* 151 Mass. 280. In the cited case the cashing bank received a check from an unknown person payable to bearer, and

26

without requiring him to identify himself, although there was a local custom requiring identification in such cases. It was held that the negligence of the cashing bank lulled the drawee into a false sense of security and the latter could recover back the money paid. In *National Bank of North America v. Bangs*, 106 Mass. 441, the court hold the drawee should be permitted to recover if the party receiving the money in any manner contributed to the success of the fraud, or to the mistake of fact under which the payment was made.

The plaintiff relies upon our decision in *First Nat. Bank of Orleans v. State Bank of Alma*, 22 Neb. 769. That case was decided upon a statement of facts to the effect that B. R. Claypool maintained a deposit in each of said banks. A stranger presented to the Orleans bank a check upon the Alma bank bearing the name of Claypool as drawer, and payable to A. J. Gype, or bearer. The Orleans cashier compared the signature to the check with Claypool's genuine signature upon the bank's book, and, without requiring the holder to identify himself or to account for the manner in which he secured possession of the check, paid it. In due course, through a bank wherein the litigants each maintained a deposit, the check was paid and charged to the account of the Alma bank, and later was delivered to Claypool, who denounced the instrument as a forgery. We held the drawee should recover the money paid. Some remarks in the argument of our late chief justice, taken apart from the facts in the case, lend color to the plaintiff's argument in the instant one. At the bar it was argued that, since the check on the Alma bank was payable to bearer, identification of the holder was an immaterial fact, and the entire argument in the opinion should be considered with relation to the obligation of the cashing bank to ascertain at its peril that the check was a genuine instrument. The principle underlying the opinion is that the cashing bank was negligent in not availing itself of all means at its command to ascertain whether the check was genuine. Business

men and courts alike recognize that ordinary prudence forbids the purchase of a check from a stranger, regardless of whether the paper was payable to order or bearer. The instrument considered in the Alma case was an ordinary check, not designed for circulation, but for immediate presentment. *First Nat. Bank v. Miller*, 37 Neb. 500. As stated by Judge MAXWELL, the Alma bank did not know but that Claypool had been present when the check was presented by the holder to the Orleans bank, and, had the cashing bank made inquiries concerning the identity of the holder or the manner in which he became possessed of the instrument, the probabilities are he would not have withstood the ordeal, but the fraud would have been discovered. In *Germania Bank v. Boutell, supra,* the duty of the cashing bank to require the holder to identify himself is recognized. The rule stated in the *Orleans* case has been adopted in Massachusetts; in *People's Bank v. Franklin Bank,* 88 Tenn. 299; *Canadian Bank of Commerce v. Bingham,* 30 Wash. 484, 60 L. R. A. 955, and has been recognized in *First Nat. Bank v. Marshalltown State Bank,* 107 Ia. 327.

In *Ellis & Morton v. Ohio Life Ins. & Trust Co.,* 4 Ohio St. 628, a local custom obtained among the banks of Cincinnati requiring the cashing bank, before purchasing a check presented by a stranger and drawn upon another bank, to make careful inquiry concerning his identity, and to ascertain whether the paper was genuine and the holder was the owner thereof. The opinion turns upon the holder's negligence in failing to comply with this local custom.

In the case at bar, Viterna was payee of the forged draft, and was known to the defendant at the time it purchased the bill. The draft purports to be a foreign bill of exchange, an instrument that for many purposes is intended to circulate as money for a limited period of time; the forgery consisted in forging the name of the drawer, and not in raising the amount of a genuine bill, and the drawer maintains its place of business in a neighboring

state. The plaintiff does not plead that any suspicious circumstances surrounded the purchase of the bill by the defendant, that Viterna was not a man of fair character or so situated that the possession and presentation by him of a draft for $800 would excite suspicion in the mind of any prudent banker, nor does the plaintiff charge that at any time prior to the presentation of said instrument the defendant acquired any knowledge or entertained a suspicion concerning the forgery which it withheld from the plaintiff. The plaintiff does charge that the defendant did not take any steps to ascertain whether the draft was genuine or would be paid, but the statement, admitted by the demurrer to be true, must be taken into consideration in connection with the fact that the drawer was in South Dakota, the drawee in Chicago, and the payee was known to the defendant, a resident of Nebraska. It is not pleaded there was an agreement between the litigants that drafts drawn on each other should not be cashed if presented for sale by a payee known to the cashing bank unless it first made inquiry concerning the instrument, or that any such custom obtained in Omaha or Chicago, or that the defendant had any means at hand whereby it could have ascertained the genuineness of Moog's signature. In fact, so skillfully was that signature forged that it deceived the drawee, so that had Viterna been acquainted with the paying teller or other employee or officer charged by the plaintiff with the duty of identifying signatures to its customers' drafts, it is more than probable that it would have cashed the draft if the payee had presented the instrument for payment.

In the *Orleans* case the cashing bank had the drawer's genuine signature to compare with the name attached to the check, and it also had the power to demand that the holder should identify himself; it availed itself of but one safeguard against fraud, and we are entirely satisfied with our opinion holding that under the circumstances the Orleans bank was guilty of negligence. But in the case at bar it is not alleged the defendant had any means other

than the identity of the payee to prove the genuineness of the draft. Until the legislature shall provide that a bank is guilty of negligence in purchasing a foreign draft fair on its face from a known payee, unless it first comunicates with the drawer and the drawee to learn whether the draft is genuine, we do not feel justified in expanding the rule announced in the *Orleans* case, *supra*. Drafts aggregating many billions of dollars in value have been issued, negotiated, accepted and paid by merchants and bankers in reliance upon the rule announced in *Price v. Neal, supra,* and to the general satisfaction of the commercial world. So far as we are advised, in but one state of the Union, Pennsylvania, has the legislature modified that rule. Merchants and bankers in the great centers of the English speaking world have not moved the legislatures to modify this principle of the law merchant, and the courts should hesitate before substituting the philosophy of logicians for a practical rule evolved from the necessities of commerce.

The plaintiff also cites *First Nat. Bank v. First Nat. Bank,* 4 Ind. App. 355, but it should not be seriously considered as an authority in the case at bar because it refers to a forged school order which the learned judge writing that opinion states, at page 363 of the report, is not negotiable according to the law merchant. The court also hold the indorsement "for collection" by the holder of the order tended to divert scrutiny by the drawee of the drawer's signature because such an indorsement would indicate the instrument was not circulating as negotiable paper.

The plaintiff further cites *First Nat. Bank v. Northwestern Nat. Bank,* 40 Ill. App. 640. This case was appealed to the supreme court of that state and is reported in 152 Ill. 296. In that case checks purporting to have been drawn by the Central Union Telephone Company upon the Northwestern National Bank of Chicago, payable in four instances to "F. P. Ross, Manager," and in one case to "C. H. Wilson, A. G. Supt," were received by

the First National Bank through the clearing house. The proof established that the payees were employees of the telephone company, but were not entitled to the checks, knew nothing about them, and their indorsements, as well as the signature of the drawer, had been forged. The court hold that, while the drawee by paying a draft is estopped from thereafter denying the drawer's signature, it does not warrant the signature of any indorser, but the indorser warrants the genuineness of all preceding indorsements; that the parties stood as though the bills were genuine, but the indorsements of the payees forged, and the drawee for that reason could recover the money paid by it to the holder of the paper. The opinion is sound, but has no application to the instant case because there were no forged indorsements upon the bill in question.

*Ford & Co. v. People's Bank*, 74 S. Car. 180, 10 L. R. A. n. s. 63, is cited by the plaintiff. In that case the plaintiff's drawee paid a forged draft, and charged in his petition to recover back the money: "That the plaintiff paid the said draft upon presentation, upon the faith and credit of the indorsement of the said defendant." A general demurrer to the petition was sustained, and the supreme court of that state hold that a general indorsement of a forged bill by the holder thereof is a representation that the drawer's signature is genuine upon which the drawee may rely, and, in case the instrument is forged, may recover back money paid the holder. The opinion is against the weight of authority, and is not supported by any of the cases cited by that court upon this point, except the case of *Woods & Malone v. Colony Bank*, 114 Ga. 683, and the opinion filed in the last named case cites *National Bank of North America v. Bangs, supra,* in support of the principle announced by it and later by the South Carolina court.

In the Massachusetts case the cashing bank was named as payee in a forged check payable to its order, so the instrument could not become current except by the

State v. Melcher.

bank's indorsement. The court hold that the payee was negligent in taking the check from a stranger without proof of his identity, and, by indorsing the check, gave it currency and standing. In the Georgia case the draft was payable to bearer, and the opinion is sound, based upon the negligence of the cashing bank in not requiring the party from whom it purchased the instrument to identify himself; but so far as it holds upon the reported facts that the indorsement by the holder was a warranty to the drawee that the drawer's signature was genuine, it is unsound in principle and will not be accepted as a correct statement of the law.

*First Nat. Bank v. Bank of Wyndmere, supra,* cited by plaintiff, does sustain its argument, but we are of opinion that the *Orleans* case, *supra,* commits this court to the doctrine that the drawee must establish the cashing bank's negligence, or bad faith, to justify a recovery. Since the drawee should only recover in this suit in case the cashing bank was negligent or has acted in bad faith, the burden is upon the former to plead such negligence or *mala fides.* The pleader in the instant case in our opinion has not stated in his petition facts sufficient to establish that the defendant was negligent or that it acted in bad faith in purchasing from Viterna the forged draft in question.

The judgment of the district court, therefore, is reversed and the cause remanded for further proceedings.

REVERSED.