153 So. 404

CITIZENS' BANK OF FAYETTE v. J. BLACH & SONS, Inc.

6 Div. 537.

Supreme Court of Alabama.

March 15, 1934.

S. T. Wright, of Fayette, for appellant.

R. B. Evins, Benj. Leader, and John D. Hill, all of Birmingham, for appellee.

**KNIGHT, Justice.**

Suit by the Citizens' Bank of Fayette against J. Blach & Sons. The plaintiff stated his case in four common counts. Count 2 was for money paid, and count 3 was for money had and received.

The plaintiff, a banking institution, contends that it had paid, by mistake, to the defendant $175 on what subsequently proved to be a forged draft or check; and that it is entitled to recover it back.

It is without dispute in the evidence that the plaintiff was, during the year 1932, engaged in the banking business at Fayette, Ala., and that the Mobile & Gulf Railroad Company was, during that period, one of its depositors, and one of its regular customers. The plaintiff had on file the signature card of the persons who were authorized to audit accounts, and to sign the name of the railroad company to checks drawn on this bank.

It further appears without dispute that during the latter part of November, 1932, a man representing himself to be R. C. Tracy appeared in the store of the defendant, at Birmingham, Ala., and asked for a Mr. Arthur, who was the clothing clerk. Arthur being out of the store at that time, another of the defendant's clerks sold the man a suit of clothes and an overcoat; the cost of the same being $64.50. In payment of this bill, the man, who had introduced himself as Tracy, produced a check ostensibly drawn by the Mobile & Gulf Railroad Company, for $175 in his favor, on the plaintiff, the Citizens' Bank of Fayette. The account, in settlement of which the check was drawn, appeared to have been audited by a man by the name of N. N. Boyd, and approved by one J. L. Dodson. The name of the Mobile & Gulf Railroad Company was signed to the check by N. N. Boyd. After some questioning of Tracy, the clerk, Mr. Masters, carried the check to Mr. Mudwilder, defendant's credit man, for authority to cash it. Upon being so authorized, the clerk cashed the check, taking out the amount charged for the suit of clothes and overcoat, and paid Tracy the balance in money. This check was forwarded to the Citizens' Bank of Fayette for payment, bearing the unqualified indorsements (1) of the defendant, J. Blach & Sons, and (2) the First National Bank of Birmingham. The check was presented for payment to the plaintiff by the First National Bank, Fayette, Ala., and was duly paid by the plaintiff.

When this check was canceled and paid, it was delivered to the Mobile & Gulf Railroad Company. The latter notified the plaintiff that it was a forgery, and thereupon the plaintiff repaid to the Mobile & Gulf Railroad Company the amount of the check, and demanded payment of the defendant; all of which was done promptly.

The evidence leaves no room to doubt that Tracy was an impostor and that the check was a forgery pure and simple.

The defendant declined to refund the amount of the check to plaintiff, and this suit followed.

The case was tried in the court below by the judge, without a jury, and, from a judgment in favor of the defendant, this appeal is prosecuted.

Ordinarily, money paid under a mistake of fact may be recovered in a proper action, and the denial of the right to a bank to recover in such cases is an exception to the general rule. The extent and scope of this exception is a matter upon which there is much contrariety of decision. However, it is said, in actual practice, the exception is confined within narrow limits, and is entirely just and necessary to give stability to commercial paper.

In the case of Goddard v. Merchants' Bank, 4 N. Y. 147, it was decided over eighty years ago that the drawee of a bill is held bound to know the handwriting of his correspondent, the drawer, and, if he pays a draft or check in the hands of a bona fide holder for value, he is concluded by the act, although the instrument turns out to be a forgery. But this is true, as has often been pointed out, *only when* the words *bona fide* are given a meaning to include *absence* of negligence, as well as good faith. 12 A. L. R. 1090.

In the case of Deposit Bank v. Second National Bank, 10 Ky. Law Rep. 350, the Kentucky court held that, as between the drawee and a cashing bank without *negligence* on the part of the latter, the loss must be borne by the drawee bank. The court held that in such a case the drawee should not be heard to say he was mistaken. That the doctrine is but the practical application of the rule that, where one of two innocent persons must suffer, he who has been the occasion of the loss must bear it. But the rule is applied only where both parties are equally innocent of wrong. If the person collecting the check has been guilty of negligence, if he did not receive it in the ordinary course of business, or if he received it under circumstances which should have excited suspicion, he cannot hold the money so received. On the other hand, if the bank pays the check when it could, by the exercise of proper care, have discovered the forgery, there would be no occasion for the application of the rule. To the same effect is the holding of the same court in the case of Deposit Bank v. Fayette National Bank, 90 Ky. 10, 13 S. W. 339, 7 L. R. A. 849.

In the case of State Bank v. First National Bank, 87 Neb. 351, 127 N. W. 244, 29 L. R. A. (N. S.) 100, it was held that, where a check was cashed for a payee *known* to the cashing bank, with *no suspicious circumstances* attending the transaction, the drawee could not recover the money paid.

In the case of Iron City National Bank v. Peyton, 15 Tex. Civ. App. 184, 39 S. W. 223, it was held that, where one takes a check for goods sold, under circumstances attended with no suspicious circumstances, the drawee bank could not recover the money paid.

The old doctrine holding the bank bound to know its correspondent's signature is thus referred to by Mr. Morse in his treatise (section 464):

"The old rule is unreasonable. The old doctrine was that a bank was bound to know its correspondent's signature. A drawee could not recover money paid upon a forgery of the drawer's name, because, it was said, the drawee was negligent not to know the forgery, and it must bear the consequence of its negligence. This doctrine is fast fading into the misty past, where it belongs. It is almost dead, the funeral notices are ready, and no tears will be shed, for it was founded in misconception of the fundamental principles of law and common sense.

"It is not enough to create legal liability, or to give A a right to acquire or retain the property of B, to show merely that A has been negligent; if so, property would be changing hands so rapidly that it could not be seen in transit, any more than the spokes of a bicycle. One more element is necessary, namely, that damage to A, being himself innocent in the matter, should naturally and proximately result from B's negligence. * * *

"If a bank receives forged bills purporting to be its own, it can, upon reasonably prompt discovery of the forgery, return them. Is it harder for the bank to know its own paper than that of its depositors, and is it less negligent in receiving forgeries of its own name than in paying upon a forgery of some one out of a hundred, or a thousand customers?"

In the case of Bank of Williamson v. McDowell County Bank, 66 W. Va. 545, 66 S. E. 761, 36 L. R. A. (N. S.) 605, it is held that freedom from fault, i. e., negligence, is one of the requisites or conditions of the rule which would protect the cashing bank from being required to refund the money to the drawee bank on a forged instrument.

This was also made plain by Lord Mansfield in the case of Price v. Neal, 3 Burr. 1354, in declaring the defendant (when sued for return of the money) had bona fide paid one of the bills "without the least privity or suspicion of any forgery."

In the case of National Bank v. Bangs, 106 Mass. 441, 8 Am. Rep. 349, it was held that, if a party take a check, either payable to his order from a *stranger* or other third person, without inquiry, although in good faith and for value, and give currency and credit by indorsing it before receiving payment, the drawee may recover back the money.

This same conclusion seems to be held in the following cases: First Nat. Bank of Danvers v. First Nat. Bank of Salem, 151 Mass. 280, 24 N. E. 44, 21 Am. St. Rep. 450; First National Bank v. Northwestern National Bank, 152 Ill. 296, 38 N. E. 739, 26 L. R. A. 289, 43 Am. St. Rep. 247; First Nat. Bank of Marshalltown v. State Bank, 107 Iowa, 327, 77 N. W. 1045, 44 L. R. A. 131; First Nat. Bank of Quincy v. Ricker, 71 Ill. 439, 22 Am. Rep. 104; Third Nat. Bank v. Allen, 59 Mo. 310; First Nat. Bank of Crawfordsville v. First Nat. Bank of Lafayette, 4 Ind. App. 355, 30 N. E. 808, 51 Am. St. Rep. 221; Corn Exch. Bank v. Nassau Bank, 91 N. Y. 74, 43 Am. Rep. 655; White v. Continental Nat. Bank, 64 N. Y. 316, 21 Am. Rep. 612; People's Bank v. Franklin,

88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884.

In the case of Germania Bank v. Boutell, 60 Minn. 189, 62 N. W. 327, 27 L. R. A. 635, 51 Am. St. Rep. 519, it was held that the bank may recover back money paid on a check to which the signature of one of its customers was forged, when there was a lack of good faith on the part of the payee toward the bank, as where he knew the check was forged, or knew the circumstances casting suspicion on its genuineness not known to the bank, and which he did not communicate to it, or where the holder *was negligent* in not making due inquiry as to the validity of the check before he took it, and the drawee, having a right to presume that he had made such inquiry, was itself thereby excused from making inquiry before paying it. In the first case, the holder is really a party to the fraud, and is not a good faith holder. In the second case, he has, by his negligence, contributed to the consummation of the mistake on the part of the drawee by misleading him.

In 5 Cyc. 546, the principle governing the right of the drawee bank to recover the money paid on a forged check or bill is thus stated by the author: "Although money paid by mistake can generally be recovered, the payment of forged paper is an exception. When payment is made to the holder of paper who has come into possession of it *without any fault on his part, and his situation would be rendered worse if compelled to refund than it was before receiving payment,* the money cannot be recovered. If, however, he has been *negligent in any regard,* he cannot retain the money. To justify him in doing so the bank alone must have been negligent." This principle, by reference to the notes thereunder, seems to be supported by the citations of numerous authorities.

In Corpus Juris, vol. 8, pp. 607 and 608, the rule is thus stated: "Inasmuch as it is incumbent on the drawee of a bill or a check to be satisfied that the signature of the drawer is genuine, if he pays to a *bona fide* holder an instrument to which the drawer's name has been forged, he is bound by his act and cannot recover the money so paid; and the usual application of this rule is where a bank pays a check on which the name of the drawer is forged. This rule is recognized by the Negotiable Instruments Law. It is as applicable to nonnegotiable bills as to negotiable ones. But this rule that the drawee is presumed to know the signature of his drawer will not apply where the holder by

his *own negligence contributes to the success of the fraud practiced.*" (Italics supplied.)

In South Carolina, it is held that an unrestricted indorsement of a draft is a representation that the signature of the drawer is genuine, on which the drawee may rely, and that he may recover money paid to the indorser, where the name of the drawer was forged. Ford & Co. v. People's Bank of Orangeburg, 74 S. C. 180, 54 S. E. 204, 10 L. R. A. (N. S.) 63, 114 Am. St. Rep. 986, 7 Ann. Cas. 744.

In the case of People's Bank v. Franklin Bank, 88 Tenn. 299, 12 S. W. 716, 6 L. R. A. 724, 17 Am. St. Rep. 884, it is held that a bank can recover of a person to whom payment is made on a forged check, where such person does not require identification of the person from whom he received the check. The court held that the failure to require identification was such negligence that the loss must fall on him, rather than on the drawee bank which paid without other negligence than mere failure to recognize the forgery.

In McKleroy v. Southern Bank of Kentucky, 14 La. Ann. 458, 74 Am. Dec. 438, the court, while admitting the general rule of nonrecovery, held, nevertheless, where a party becomes the holder of a forged draft before it had been accepted, and the loss had already attached before payment by the acceptors, who, immediately on ascertaining the spurious character of the paper, gave notice to the holders, such a case was an exception to the general rule, and the acceptors were not estopped from proving the forgery and recovering back the money. The principle of the rule upon which the case was decided is, the holder had suffered no loss, it having already occurred, and he ought not to be permitted to profit by the mere accident of payment.

In the case of First National Bank v. First National Bank, 4 Ind. App. 355, 30 N. E. 808, 51 Am. St. Rep. 221, it was held that the rule that a drawee cannot recover money paid is based upon presumption alone, and is decisive only when the person receiving the money has in no way contributed to or permitted the mistake or fraud. The court further held that, where a bank placed its indorsement upon the duebill of a trustee, in order to collect from the bank at which it is payable, the indorsement, whatever may have been its purpose, would tend to divert the drawee from inquiry and scrutiny, for it gave the paper the appearance of a genuine transaction. The indorsement of the bank would hardly fail to

inspire confidence in the genuineness of the paper, as vouching for it.

In Missouri, the doctrine has been carried to further limits in favor of the drawee bank, holding that one who purchases a draft is bound to satisfy himself that the paper is genuine, *and that by indorsing it,* or *presenting* it for payment, or putting it in circulation before presentation, he impliedly asserts he has performed this duty. National Bank v. Mechanics' American National Bank, 148 Mo. App. 11, 127 S. W. 429.

In the case of First National Bank v. Marshalltown State Bank, 107 Iowa, 327, 77 N. W. 1045, 44 L. R. A. 131, the Supreme Court of Iowa held that the rule was established by the overwhelming weight of authority that, as between the drawee and a good-faith holder of the check, such drawee bank is to be deemed the place of final settlement, where all prior mistakes and forgeries should be corrected and settled for all time, and, if the drawee overlooked the forgery, and payment is made, it must be final, but acknowledges the rule has one qualification: When the holder of the check has been negligent in not making inquiry, and the circumstances were such as to demand an inquiry when he took the check, the drawee may recover.

██ After a general survey and due consideration of the authorities bearing upon the right of a drawee bank to recover money paid on a forged check or draft, we are at the conclusion that, in the absence of any negligence on the part of the cashing bank, or person to whom the drawee bank pays the forged instrument, the act of payment becomes the final act in the transaction, and the money so paid cannot be recovered; but, if the party to whom the payment was made was guilty of bad faith, or was guilty of negligence, the result of which proximately contributed to the success of the fraud practiced, then, and in that event, the money may be recovered. We believe this conclusion to be in consonance with the great weight of authoritative expression of the various courts in the United States.

This conclusion in no wise conflicts with the holding of this court in the case of Young & Son v. Lehman, Durr & Co., 63 Ala. 519.

██ With this rule for our guidance, has the plaintiff, under the facts disclosed by the record, shown itself entitled to a recovery back from J. Blach & Sons of the money paid by it on the forged draft or check? We say forged, for the conclusion is inescapable that it was forged. We think it has.

As to just what effort the defendant's clerks made to ascertain the identity of the impostor from whom the defendant acquired the check fully appears in the record, and it there appears without any sort of dispute or conflict. We are therefore permitted to pass on this phase of the evidence without the necessity of indulging any presumption in favor of the conclusion thereon by the trial court, if indeed the trial court's conclusion, in this particular, was different from our own. Wright v. Price, 226 Ala. 591, 147 So. 886.

It appears that in the latter part of November, 1932, the defendant was engaged in the mercantile business at Birmingham, Ala., and carried a stock of men's clothing; that during that month a man representing himself to be R. C. Tracy came into the store and asked for a Mr. Arthur, who was the defendant's clothing salesman. Arthur was out at the time, and Masters, another clerk, waited on the man, and sold him an overcoat and a suit of clothes. The man then produced the forged check, and offered it in payment. No one saw the man but Masters; and he did not know him. The only identification given by the man of himself was the exhibition to the clerk of certain papers, which the clerk took to be railroad passes, some cards, a paper purporting to be a deputation of some sheriff to R. C. Tracy to make arrest; and a special railroad officer's gold badge with the name R. C. Tracy on it. There was nothing to show that the man was in fact R. C. Tracy, except the statements of the man himself. The clerk, on cross-examination, testified that the man weighed about 133 or 134 pounds; was dark haired, "talked kind of fast," and was "a kind of dirty faced fellow, and kind of growth of beard on him."

It appears that, without other identification, the clerk, after conferring with the credit man, who did not know the impostor, and who never saw him, cashed the check, paying the difference in cash between the price of the clothes and the amount of the check to the unknown impostor.

The conclusion is inescapable that the defendant's credit man was guilty of negligence in not requiring a better identification of the party before authorizing the cashing of the check, and that this negligence proximately aided the impostor in perpetrating the fraud, and that the plaintiff, drawee bank, is entitled to recover in this suit.

The court below therefore erred in rendering judgment for the defendant. Judgment should have been rendered for the plaintiff. A judgment will be here entered in favor of

the appellant and against the appellee, defendant in the court below, for the amount of said check, with interest thereon from the 25th day of November, 1932.

Reversed and rendered.

All the Justices concur.